# EXHIBIT D
# Part 1

JMA/459758.01                                                          2848-8-567

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| AMERICAN SAFETY CASUALTY<br>INSURANCE COMPANY and<br>SCOTTSDALE INSURANCE COMPANY,<br><br>       **Plaintiffs,**<br><br>  v.<br><br>CITY OF WAUKEGAN,<br><br>       **Defendant.**<br>_____<br><br>CITY OF WAUKEGAN,<br><br>       **Counter-Plaintiff,**<br><br>  v.<br><br>AMERICAN SAFETY CASUALTY<br>INSURANCE COMPANY; et al.,<br><br>       **Counter-Defendants.** | **Case No. 07CV1990**<br>**(Consolidated with Case No. 07CV64)**<br>**Judge Kendall**<br>**Magistrate Judge Cole** |

### AFFIDAVIT OF RANDOLPH E. ROBINSON

I, Randolph E. Robinson, being first duly sworn, of sound mind, and over the age of 18, state that, if I was called to testify in this matter, would testify as follows:

1.    I am currently employed by Northfield Insurance Company and am familiar with the matter set forth in the caption above.

2.    Attached hereto as Exhibit 1 is a true and accurate copy of the policy of insurance issued by Northfield Insurance Company to the City of Waukegan for the time period from November 1, 1991 to November 1, 1994 (Policy Number AA101050).

3.    Attached hereto as Exhibit 2 is a true and accurate copy of the policy of insurance

issued by Northfield Insurance Company to the City of Waukegan for the time period from November 1, 1994 through November 1, 1995 (Policy Number AA101117), when such policy was replaced by Policy Number AA101158.

4.      Attached hereto as Exhibit 3 is a true and accurate copy of the policy of insurance issued by Northfield Insurance Company to the City of Waukegan for the time period from November 1, 1995 to November 1, 1997 (Policy Number AA101158).

Further, affiant sayeth naught.

_____
Randolph E. Robinson

Subscribed and sworn to before me
this 4ᵗʰ day of June, 2009



_____
Notary Public

MELISSA D. RAGETH
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/12

2

# EXHIBIT D-1


**Northland**
Insurance Companies

The Company issuing this policy is indicated by the box marked with "X"

NORTHLAND INSURANCE COMPANY
ST PAUL MINNESOTA 55102

NORTHLAND CASUALTY COMPANY
ST PAUL MINNESOTA 55102

NORTHFIELD INSURANCE COMPANY
ST PAUL MINNESOTA 55102

DECLARATIONS—AGGREGATE EXCESS WARRANTY POLICY

PRODUCT LINE 12        AGENCY NO. 426        POLICY NO. NS 101050

(1) The name and address of the Assured   CITY OF WAUKEGAN
    106 N. UTICIA WAUKEGAN IL 60085

(2) The Period of Insurance: From 4/1/91     to 4/1/94

(3) The first Annual Premium

(4) The First and Sum Insured hereunder

23AA101050-08

NOR00918

HOME OFFICE ACCOUNTING COPY

 **Northland**
Insurance Companies

**ENDORSEMENT**

Attached to and forming part of Policy Number  AA101050

issued to  CITY OF WAUKEGAN

Date of Endorsement    15th November 1991

Refer to attached covernote endorsement for which Northfield Insurance Company participate for 30%

All other terms and conditions of this policy remain unchanged.

_Robert J. Billings_ _____ Agent

NFD-64 (F3/79) (Reprint 7/82)

NOR00919

# COVER NOTE

*Minet*

Lloyd's & International Insurance Brokers
Registered England 513938

PENCO,
309 Plus Park Blvd.
P.O. Box 144,
Nashville,
Tennessee 37202,
U.S.A.

Registered Office
Minet House 100 Leman Street
London E1 8HG and at Lloyd's
Tel 071-481 0707
Cable Minsuret London E1
Telex 8813901 JHMLDN G
Facsimile 071-488 9786

DATE: 6th November 1991

NUMBER:   101104700

RENEWING: New Business

AA101050

TYPE:        SECTION I:     A.   ALL RISKS OF PHYSICAL LOSS OR DAMAGE
                            B.   AUTOMOBILE PHYSICAL DAMAGE.

             SECTION II:    A.   COMPREHENSIVE GENERAL LIABILITY
                            B.   PREMISES MEDICAL PAYMENTS
                            C.   LAW ENFORCEMENT LIABILITY.

             SECTION III:   A.   AUTOMOBILE LIABILITY
                            B.   AUTOMOBILE MEDICAL PAYMENTS
                            C.   UNINSURED MOTORISTS/NO FAULT.

<u>COVERAGE UNDER SECTION IV IS AFFORDED ON A CLAIMS MADE BASIS
AND CONTAINS PROVISIONS WHICH MAY BE DIFFERENT FROM THOSE OF
OTHER SECTIONS OF THIS POLICY.</u>

             SECTION IV:         ERRORS OR OMISSIONS LIABILITY.

             SECTION V:     A.   WORKERS COMPENSATION
                            B.   EMPLOYERS LIABILITY.

             SECTION VI:    A.   EMPLOYEE DISHONESTY
                            B.   MONEY AND SECURITIES (WITHIN PREMISES)
                            C.   MONEY AND SECURITIES (OUTSIDE PREMISES)
                            D.   MONEY ORDERS AND COUNTERFEIT CURRENCY
                            E.   DEPOSITORS FORGERY.

FORM:        Public Entity Package Wording as agreed by Underwriters.

ASSURED:     CITY OF WAUKEGAN AND ALL BOARDS, DEPARTMENTS, DIVISIONS,
             COMMISSIONS, AUTHORITIES AND ANY OTHER ACTIVITIES UNDER THE
             SUPERVISION OR CONTROL OF THE CITY WHETHER NOW OR HEREAFTER
             CONSTITUTED.

ADDRESS:     106 N. Uticia Waukegan, IL 60085              NOR00920

                                                     Continued.

# COVER NOTE

*Minet*

Lloyd's & International Insurance Brokers

Registered England 513938

Page 2 of Cover Note No. 101104700

Registered Office
Minet House 100 Leman Street
London E1 8HG and at Lloyd's
Tel 071-481 0707
Cable Minsuret London E1
Telex 8813901 JHMLDN G
Facsimile 071-488 9786

**PERIOD:**   36 Months at 1st November, 1991.

**INTEREST:**   Covering All Real and Personal Property Transit, Contingent
Builders Risk, Fine Arts, Accounts Receivable, Valuable Papers
and Records, Extra Expense, E.D.P. Equipment/Media and other
Perils as set out above in respect of all operations of the
various Assureds and for their agencies.

**SUM INSURED:**   PART A. To pay the difference between:-

| | | | |
|---|---|---|---|
| SECTION I: | | $1,000,000 | each and every loss occurrence and in the aggregate annually respects Flood, Earthquake and Debris Removal separately. |
| SECTION II: | A. | $1,000,000 | any one loss and/or occurrence Combined Single Limit |
| | B. | $   1,000 | per person |
| | | $  100,000 | each accident |
| | C. | $1,000,000 | any one loss and/or occurrence Combined Single Limit |
| | | $1,000,000 | in the aggregate annually for Products/Completed Operations |
| | | $2,000,000 | in the aggregate annually for Law Enforcement Liability |
| | | $2,000,000 | in the aggregate annually for All other Third Party Coverages in this Section |

NOR00921

Continued.

RMM04/674/7/JLH ML/6.11.91

A Subsidiary of Minet Holdings PLC

# COVER NOTE

### *Minet*

Lloyd's & International Insurance Brokers

Registered England 513938

Registered Office
Minet House 100 Leman Street
London E1 8HG and at Lloyd's
Tel 071-481 0707
Cable Minsuret London E1
Telex 8813901 JHMLDN G
Facsimile 071-488 9786

Page 3 of Cover Note No. 101104700

SECTION III:     A.   $1,000,000     any one loss and/or
                                     occurrence Combined
                                     Single Limit

                 B.   $    5,000     per person

                      $  100,000     each accident

                 C.   applicable State limit not exceeding
                      the limit under Section III A. above.

SECTION IV:

                 $1,000,000          any one claim and in the
                                     aggregate annually

                      (Retroactive Date: 1st January, 1986)

SECTION V:       A.   Not Covered    any one occurrence
                 B.   Not Covered    any one occurrence

SECTION VI:      A.   $250,000       each and every loss

                 B.   $250,000       each and every loss,
                                     (within premises)

                 C.   $250,000       each and every loss,
                                     (outside premises)

                 D.   $250,000       each and every loss

                 E.   $250,000       each and every loss.

and a minimum underlying Self Insured Retention (S.I.R.) of:-

                 $ 25,000            each and every loss occurrence Section
                                     I or VI but

                 $100,000            each and every loss and/or claim and/or
                                     occurrence Section II, III, or IV.

NOR00922

                                     Continued.

RMH04/674/8/JLH ML/6.11.91

A Subsidiary of Minet Holdings PLC

## COVER NOTE

# *Minet*

Lloyd's & International Insurance Brokers

Registered England 513938

Page 4 of Cover Note No. 101104700

Registered Office
Minet House 100 Leman Street
London E1 8HG and at Lloyd's
Tel 071-481 0707
Cable Minsuret London E1
Telex 8813901 JHMLDN G
Facsimile 071-468 9786

In the event of a loss involving more
than one Section the highest Self
Insured Retention will apply.

PART B..   NOT COVERED

SITUATION:   Worldwide.

CONDITIONS:   Servicing by Corroon and Black management at Assureds expense.
Physical Damage cover on replacement cost basis per policy
wording except Auto Physical Damage and Mobile Equipment which
on Actual Cash Value basis.
Maintenance Deductibles:- Not Applicable
Loss runs to be shown to Underwriters quarterly during
applicable period of insurance and semi-annually thereafter.
60 days Cancellation Clause prior to each anniversary date only.

PREMIUM:   (100%) $510,000 3 years payable in equal annual instalments
adjustable prospectively at anniversary on updated Underwriting
information.

SECURITY:   30.00%   Northfield Insurance Company

For and on behalf of
J.H. MINET & CO. LTD.

NOR00923

Please examine the terms, conditions and security shown on this Cover Note.  Please
check that the Cover Note is in accordance with your instructions and if any change
is required or if any security is not acceptable to you or your client, then contact
us immediately in writing.
This Cover Note is not a policy document;  it is evidence only of the coverage
placed herein and subject to the terms and conditions of the contract or policy to
be duly issued by Underwriters.

RMM04/674/9/JLH ML/6.11.91

A Subsidiary of Minet Holdings PLC

 **COVER NOTE**

Li /d's & International Insurance Brokers

Registered England 513938

ATTACHING TO COVER NOTE NO. 101104700

Registered Office
Minet House 100 Leman Street
London E1 8HG and at Lloyd's
Tel 071-481 0707
Cable Minsuret London E1
Telex 8813301 JHMLDN G
Facsimile 071-488 9788

It is hereby understood and agreed that in consideration of the Section IV
Retroactive Date an Additional Premium of $5,000 is due hereon.

NOR00924

RHM04/674/10/JLH ML/6.11.91

A Subsidiary of Minet Holdings PLC



# Lloyd's Policy



**We, Underwriting Members** of the syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as "the Underwriters"), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his heirs, Executors and Administrators) shall be liable only for his own share of his syndicate's proportion of any such loss and of any such expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

**LLOYD'S POLICY SIGNING OFFICE**
*General Manager*

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

NOR00925

# Lloyd's Policy



**Lloyd's, London**
1 Lime Street,
London EC3M 7HA

The Assured is requested to read this Policy and,
if it is incorrect, return it immediately to your broker
for alteration. In all communications the Policy
Number appearing in line one of the Schedule should
be quoted.

I(A)

NOR00926

The Table of Syndicates referred to on the face of this Policy follows:

| TABLE APPLICABLE *TO* | | ONLY | TABLE APPLICABLE *TO* | | ONLY |
|---|---|---|---|---|---|
| **A** | | | **B** | | |

| FOR LPSO USE ONLY | | LPSO NIL & DATE | | FOR LPSO USE ONLY | | LPSO NIL & DATE | |
|---|---|---|---|---|---|---|---|
| 1281 | 552 | 63907 | 5 3192 | 1289 | 552 | 63908 | 5 3192 |

| AMOUNT, PERCENTAGE OR PROPORTION | SIGNATURE | UNDERWRITER'S REFERENCE 1 | AMOUNT, PERCENTAGE OR PROPORTION | SIGNATURE | UNDERWRITER'S REFERENCE 1 |
|---|---|---|---|---|---|
| **PERCENT** | | | **PERCENT** | | |
| 30.00 | 210 | 031780029501 | 30.00 | 210 | 021780069502 |
| 10.81 | 122 | CC246091ABRR | 10.81 | 122 | CC247L91BRRR |
| 5.41 | 529 | L18A01285000 | 5.41 | 529 | L21A01285000 |
| 2.88 | 18 | G22202134060 | 2.88 | 18 | 07620507000S0 |
| 3.61 | 212 | 028840655601 | 3.61 | 212 | 028840655601 |
| 2.16 | 847 | Q8582E90X81X | 2.16 | 847 | Q8547L90X15SX |
| 3.61 | 548 | T8200L91SA961 | 3.61 | 548 | T8200L91C557 |
| 7.44 | 205 | 400N01826LKA | 7.44 | 205 | 458N02065NKA |
| 1.44 | 1051 | LAZMO033440S | 1.44 | 1051 | LAZMO034505 |
| 1.44 | 322 | 91X52146 | 1.44 | 322 | 91X55073 |
| 1.44 | 602 | NAM909APHJE | 1.44 | 602 | HAA99GAOEWD |
| 0.72 | 1034 | C19091800019 | 0.72 | 1034 | C19031800020 |
| 0.72 | 362 | 81191000387 | 0.72 | 362 | N13911X000423 |
| 0.54 | 184 | A51956DLA91A | 0.54 | 184 | A51956DLA91A |
| 0.54 | 79 | 106FA8F8147A1 | 0.54 | 79 | 106FA8J68596W |
| 0.72 | 209 | 41085604J | 0.72 | 209 | 81082728HJ |

| FOR LPSO USE ONLY | | LPSO NIL & DATE | | FOR LPSO USE ONLY | | LPSO NIL & DATE | |
|---|---|---|---|---|---|---|---|
| 1282 | 552 | 63907 | 5 3192 | 1290 | 552 | 63908 | 5 3192 |

| AMOUNT, PERCENTAGE OR PROPORTION | SIGNATURE | UNDERWRITER'S REFERENCE 2 | AMOUNT, PERCENTAGE OR PROPORTION | SIGNATURE | UNDERWRITER'S REFERENCE 2 |
|---|---|---|---|---|---|
| **PERCENT** | | | **PERCENT** | | |
| 0.72 | 1118 | FTX50016303I | 0.72 | 1113 | LTX50012403I |
| 0.72 | 225 | 00204591 | 0.72 | 225 | 00204791 |
| 0.72 | 227 | 01540N8AAH2X | 0.72 | 227 | 01540ABB8R2X |
| 0.36 | 520 | 870XDJ03785E | 0.36 | 520 | 870XDJ03789C |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1992/103

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1992/103

| TOTAL LINE | NO. OF SYND | FOR LPSO USE ONLY | TOTAL LINE | NO. OF SYND | FOR LPSO USE ONLY |
|---|---|---|---|---|---|
| 70.00 | 20 | ILA1    8794 | 70.00 | 20 | ILA1    8794 |

NOR00927

ENDORSEMENT attaching to and forming part of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991.  Endorsement No. 3

## ENDORSEMENT

It is hereby understood and agreed that coverage under Section II in respect of Employee Benefit Liability shall be based on the following:-

This Policy shall indemnify the Assured in respect of all sums which the Assured shall become legally obligated to pay on account of any occurrence during the Policy period arising from any negligent act, error or omission of the Assured or any other person for whose acts the Assured is legally liable in the administration of the Assured's Employee Benefit Plans as defined herein.

The term "Assured" wherever used herein shall mean the Named Assured under this Policy and any other person who was or now is or may hereafter become a fiduciary of the Assured's Employee Benefit Plans

The term "Employee Benefit Plans" shall mean group life insurance, group accident or health insurance, pension plans, employee stock subscription plans, workmen compensation, unemployment insurance, social security, disability benefits, employee welfare benefit plans and welfare plans and any other similar Employee Benefit Plans.

The term "Administration" shall mean:

    (1)  giving counsel to employees with respect to the Employee Benefits Plans;

    (2)  interpreting the Employee Benefit Plans;

    (3)  handling of records in connection with the Employee Benefit Plans;

    (4)  affecting enrollment, termination or cancellation of employees under the Employee Benefit Programs;

provided all such acts are authorized by the Assured.

The coverage afforded herein does not apply to:

    (a)  any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation.

    (b)  any claim for failure of performance of contract by any insurer;

    (c)  any claim based upon the failure to comply with any law concerning Workmens Compensation, Unemployment Insurance, Social Security, Disability Benefits or any similar law;



RHM04/759/11/GS CW/28.11.91

NOR00928

- 2 -

(d)  any claim based upon (1) failure of stock shares to perform as
represented or (2) advice given to an employee to participate or not
participate in stock subscription plans;

(e)  claims based upon the Employee Retirement Income Security Act of
1974, Public Law 95-406 commonly referred to as the Pension Reform
Act of 1974, and amendments thereto, or similar provisions of any
Federal, State or Local Statutory Law or Common Law.

All other terms, conditions and limitations of this Policy remain unchanged.

RMM04/759/12/GS CW/26.11.91

NOR00929

ENDORSEMENT attaching .o and forming part of Section I of Po..cy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 2

---

### SEEPAGE OR POLLUTION OR CONTAMINATION AND DEBRIS REMOVAL AND COST OF CLEAN UP ENDORSEMENT

---

#### SEEPAGE OR POLLUTION OR CONTAMINATION EXCLUSION

Notwithstanding anything to the contrary contained in the Policy to which this Endorsement is attached this Policy does not insure against loss, damage, costs, fines, penalties or expenses directly or indirectly consequent upon:-

seepage or pollution or contamination from any cause.

#### DEBRIS REMOVAL AND COST OF CLEAN UP EXTENSION

Notwithstanding anything to the contrary contained in the Policy to which this Endorsement is attached, in the event of direct physical loss or damage to the property covered hereunder, this Policy also insures, within the sum insured

a)   expenses incurred in removal from the premises of the Assured of debris of the insured property destroyed or damaged

and/or

b)   cost of clean up, at the premises of the Assured, made necessary as a result of such loss or damage.

It is a condition precedent to recovery under this extension that Underwriters shall have paid or agreed to pay for physical loss or damage and that the Assured shall give notice to the Underwriters of intent to claim for cost of removal of debris or cost of clean up NO LATER THAN 12 MONTHS AFTER THE DATE OF SUCH PHYSICAL LOSS OR DAMAGE.

#### AUTHORITIES EXCLUSION

This Policy does not cover expenses, fines, penalties or costs incurred or sustained by the Assured or imposed on the Assured at the order of any Government Agency, Court or other Authority, in connection with any kind or description of environmental impairment including seepage or pollution or contamination from any cause.

RUMCA/759/10/GS CW/28.11.91

ENDORSEMENT attaching to and forming part of Policy No. 101104700

in the name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 1

ENDORSEMENT

Premium

| Period | Premium | |
|---|---|---|
| Period I | $175,000 | |
| Period II | $170,000 | (provisional) |
| Period III | $170,000 | (provisional) |

RHH04/759/9/GB CW/28.11.91

NOR00931

PRFM/60/1/JAN TH/2 05.92

## Schedule

Policy or Certificate No.        552  /  101104700        Contract No. (if any)

The name and address of the Assured

CITY OF WAUKEGAN AND ALL BOARDS, DEPARTMENTS,
DIVISIONS, COMMISSIONS, AUTHORITIES AND ANY
OTHER ACTIVITIES UNDER THE SUPERVISION OR
CONTROL OF THE CITY WHETHER NOW OR HEREAFTER
CONSTITUTED.

The risk, interest, location and sum insured hereunder

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due

U.S.A.

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to* ... only that proportion of any
*Liability insurances affording worldwide coverage.* ... associated expenses, if any, in

*In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal
Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed
to by or arising from, ionising radiations or contamination by radioactivity from any nuclear fuel or from any
nuclear waste from the combustion of nuclear fuel.* ... amount(s) of Insurance stated

13/2/64
N.M.A. 1477

NMA 2419                                                    Set and Printed by The City Print Ltd. 071-353 1000

therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance
or other officer specified for that purpose in the statute, or his successor or successors in office, as their
true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding
instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract
of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer
is authorized to mail such process or a true copy thereof.

NMA 1998 (24/4/86) Form approved by Lloyd's Underwriters' Non-Marine Association. Printed by The Chalton Perry Co. Ltd.

The period of Insurance from    1st November, 1991    to    1st November, 1994
both dates inclusive, and for such further period or periods as may be mutually agreed upon
                    /forth days at 12.01 a.m. Local Standard Time
Dated in   LONDON                    the                    22nd May, 1992.

J or J(A) Schedule NMA 2422 for attached to NMA 2429, NMA 2431, NMA 2461 or NMA 2462

NOR00932



COPY

ENDORSEMENT attaching to and forming part of Policy No. 101104700

in the Name of CITY OF WAUKEGAN, IL

Effective date of this endorsement is 1st November 1992. Endorsement No. 10

<u>ENDORSEMENT</u>

It is hereby noted and agreed that the following shall apply:-

1. The policy number is amended to read G512157.

2. The premium for the period 1st November 1992 to 1st November 1993
shall be $170,000 (100%).

3. The security hereon shall be 70% Lloyd's Underwriters and
Underwriters Lines hereon totalling 70% are percentages of 100% of
the total limits and premium specified herein. It is also understood
and agreed that as and from the above effective date Underwriters
subscribing to this policy are as signed hereon and not as previously
signed.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED





**TABLE APPLICABLE** PD **ONLY**

| FOR LPSO USE ONLY | | LPSO No. & DATE | | |
|---|---|---|---|---|
| UXO1 | 2602 | 0576 | 62196 25 02 193 | |
| | 287 | | | |

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | | 1 |
|---|---|---|---|---|
| PERCENT | | | | |
| 30.60 | 210 | 05404061090? | |
| 12.97 | 122 | CC246D02ARRK | |
| 5.41 | 529 | L15AO1S9000D | |
| 2.88 | 15 | 022202134060 | |
| 3.61 | 212 | 032263S568001 | |
| 2.34 | 947 | 09532E91A24X | |
| 3.61 | 546 | TB200L92A951 | |
| 1.44 | 205 | 400N0132S2LA | |
| 1.44 | 1051 | LAZM0034406 | |
| 1.44 | 322 | 92X82148 | |
| 0.54 | 79 | 126N82F5147A | |
| 0.72 | 1084 | C1902V00019 | |
| 0.72 | 1113 | FTX500163041 | |
| 0.72 | 362 | 31192A000337 | |
| 0.72 | 225 | 00204692. | |

E.J.S.

| FOR LPSO USE ONLY | | LPSO No. & DATE | | |
|---|---|---|---|---|
| | | 0576 | 62196 25 02193 | |
| | 238. | | | |

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | | 2 |
|---|---|---|---|---|
| PERCENT | | | | |
| 0.72 | 227 | 016A0ACAAH2X | |
| 0.72 | 991 | 0024092AA000 | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1993/102

| | | | FOR LPSO USE ONLY | |
|---|---|---|---|---|
| TOTAL LINE | | | | |
| 30.00 | 17 | ILA1 | 8190 | |

---

**TABLE APPLICABLE** JA **ONLY**

| DR LPSO USE ONLY | | LPSO No. & DATE | | |
|---|---|---|---|---|
| X01 | 2602 | 0576 | 62196 25 02 193 | |
| | 253 | | | |

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | | 1 |
|---|---|---|---|---|
| PERCENT | | | | |
| 30.00 | 210 | 05404061090? | |
| 12.97 | 122 | CC247L929RNR | |
| 5.41 | 529 | L27A01692000 | |
| 2.88 | 15 | 076200007006D | |
| 3.61 | 212 | Q9847LD1A58X | |
| 2.34 | 947 | Q9847LD1A56X | |
| 5.61 | 546 | TB200L92C267 | |
| 1.44 | 205 | 45BN02058HLA | |
| 1.44 | 1051 | LAZM0034806 | |
| 1.44 | 322 | 92X55079 | |
| 0.72 | 79 | 126N83J5520A | |
| 0.72 | 1934 | C199X2X00020 | |
| 0.72 | 1113 | LTX500164041 | |
| 0.72 | 362 | N13526000423 | |
| 0.72 | 225 | 00204782 | |

E.J.S.

| FOR LPSO USE ONLY | | LPSO No. & DATE | | |
|---|---|---|---|---|
| | | 0576 | 62196 25 02193 | |
| | 254 | | | |

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | | 2 |
|---|---|---|---|---|
| PERCENT | | | | |
| 0.72 | 227 | 016A0ACBRR2X | |
| 0.72 | 991 | 0052492AA000 | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1993/102

| | | | FOR LPSO USE ONLY | |
|---|---|---|---|---|
| TOTAL LINE | | | | |
| 70.00 | 17 | ILA1 | 8190 | |

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

NOR00934

COPY

ENDORSEMENT attaching to and forming part of Policy No. 6512157

in the Name of CITY OF WAUKEGAN, IL

Effective date of this endorsement is 1st November 1993. Endorsement No. 1

### ENDORSEMENT

It is hereby understood and agreed the following will apply:

1. The Policy Number is amended to read 6612157.

2. The Premium for the period 1st November 1993 to 1st November 1994 will be $182,500.

3. The security hereon shall be 30% Lloyds Underwriters and Underwriters Lines hereon totalling 30% are percentages of 100% of the total limits and premium specified herein. It is also understood and agreed that as and from the above effective date Underwriters subscribing to this policy are as signed hereon and not as previously signed.

ALL OTHER TERMS, CONDITIONS AND EXCEPTIONS REMAIN UNALTERED.





ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991, Endorsement No. 9

## ENDORSEMENT

It is hereby understood and agreed that Specific Condition 3, "Extended Reporting Period", of Section IV is deleted in its entirety and Replaced by the following:-

3.: EXTENDED REPORTING PERIOD: In the event of cancellation or non-renewal of this Policy or of this section of the policy the Assured shall have the option of:

    a) upon payment of an additional premium of $12,500 purchasing an "Extended Reporting Period" extending such insurance as is afforded by this Section in respect of Claims First made within a maximum period of 24 months following immediately upon the effective date of such cancellation or non-renewal, or

    b) if the Assured does not purchase the "Extended Reporting Period" underwriters shall extend such insurance as is afforded by this Section to apply to Claims First Made against the Assured during the 30 days following immediately upon the effective date of such cancellation or non-renewal but only by reason of a claim for injuries or damages which commences and was sustained subsequent to the Retroactive Date set out in Declaration 4 and prior to the effective date of such cancellation or non-renewal, and which is otherwise covered by this policy. The "Extended Reporting Period" for claims made subsequent to termination of the policy period, if purchased, must be endorsed hereto.

If however, this policy is immediately succeeded by similar claims made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than that shown in Declaration 4, the succeeding policy shall be deemed to be a renewal of this policy, and the Assured shall have no right to secure an "Extended Reporting Period" from underwriters.

    The Assured's right to purchase the "Extended Reporting Period" must be exercised by notice in writing to underwriters not later than thirty (30) days after the cancellation or termination date of this policy, and must include tender of the entire premium for the "Extended Reporting Period". If such notice and tender is not so given the Assured shall not at a later date be able to exercise the right to purchase the "Extended Reporting Period".

RMM04/759/25/GS/EB CW/28.11.91

NOR00937

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 8

## DATA PROCESSING MEDIA

1.  PROPERTY INSURED:  Active data processing media; being property of the
    Assured or property of others for which the Assured may be liable.

2.  PROPERTY EXCLUDED:  This Policy does not insure accounts, bills, evidences
    of debt, valuable papers, records, abstracts, deeds, manuscripts or other
    documents except as they may be converted to data processing media form,
    and then only in that form, or any data processing media which cannot be
    replaced with other of like kind and quality.

3.  PERILS INSURED:  This Insuring Agreement insures against all risks of
    direct physical loss or damage to the property covered, except as
    hereinafter provided.

4.  PERILS EXCLUDED:  This Insuring Agreement does not insure against loss,
    damage, or expense resulting from or caused directly or indirectly by:

    A.  Data processing media failure or breakdown or malfunction of the data
        processing system including equipment and component parts while said
        media is being run through the system, unless fire or explosion
        ensues and then only for the loss, damage or expense caused by such
        ensuing fire or explosion.

    B.  Electrical or magnetic injury, disturbance or erasure of electronic
        recordings, except by lightning, or as a result of Power failure
        originating at the Assured's premises or within 100 feet from the
        Buildings containing the covered Property.

    C.  Dryness or dampness of atmosphere, extremes of temperature,
        corrosion, rust unless directly resulting from physical damage to the
        data processing system's air conditioning facilities caused by a
        peril not excluded by the provisions of this Insuring Agreement;

    D.  Delay or loss of market;

    E.  Inherent vice, wear, tear, gradual deterioration or depreciation;

    F.  Any dishonest, fraudulent or criminal act by an Assured, a partner
        therein or an officer, director or trustee thereof, whether acting
        alone or in collusion with others;

    G.  Design error or faulty materials and programming errors.

    H.  Damage during service or repair.

    I.  Loss of or damage to property rented or leased to others while away
        from the premises of the Assured.

RMM04/759/23/GS CW/28.11.91.

NOR00938

J.  War risk or nuclear risks as excluded in the Policy to which this
    Insuring Agreement is attached.

5.  VALUATION:  The Underwriters shall not be liable beyond the actual
    reproduction cost of the property; if not replaced or reproduced, blank
    value of media; all subject to the applicable limit of liability stated in
    the Policy.

6.  DEFINITIONS:  The term "active data processing media" wherever used in
    this policy shall mean all forms of converted data and/or programme and/or
    instruction vehicles employed in the Assured's data processing operation,
    except all such UNUSED property.


    Subject otherwise to all terms, clauses and conditions as heretofore.

RHH04/759/24/GS CV/28.11.91

NOR00939

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 7

## DATA PROCESSING SYSTEM EQUIPMENT

1.  **PROPERTY COVERED:** Data processing system including equipment and component parts thereof owned by the Assured or leased, rented or under the control of the Assured:

2.  **PROPERTY EXCLUDED:**

    A.  Active data processing media which is hereby defined as meaning all forms of converted data and/or programme and/or instruction vehicles employed in the Assureds data processing operation;

    B.  Accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts, or other documents;

    C.  Property rented or leased to others while away from the premises of the Assured,

3.  **PERILS INSURED:** Insures against all risks of direct physical loss or damage to the property covered, except as hereinafter provided.

4.  **PERILS EXCLUDED:** This Insuring Agreement does not insure against loss, damage or expense caused directly or indirectly by:

    A.  Damage due to faulty construction or materials, error in design unless fire or explosion ensues, and then only for loss, damage, or expense caused by such ensuing fire or explosion;

    B.  Inherent vice, wear, tear, gradual deterioration or depreciation;

    C.  Any dishonest, fraudulent or criminal act by an Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

    D.  Dryness or dampness of atmosphere, extremes of temperature, corrosion, rust unless directly resulting from physical damage to the data processing system's air conditioning facilities caused by a peril not excluded by the provisions of this Insuring Agreement;

RHM04/759/21/GS CW/28.11.91

NOR00940

E.   Actual work on the property covered, unless fire or explosion
ensues, and then only for loss, damage, or expense caused by such
ensuing fire or explosion;

F.   Delay or loss of market

G.   War risk or nuclear risks as excluded in the Policy to which this
Insuring Agreement is attached.

5.   VALUATION:  Replacement Cost - The Underwriters shall not be liable beyond
the actual retail replacement cost of the property at the time any loss or
damage occurs and the loss or damage shall be ascertained or estimated on
the basis of the actual cash retail replacement cost of property similar
in kind to that insured at the place of, and immediately preceding the time
of such loss or damage, but in no event to exceed the limit of liability
stipulated in the Policy.

6.   DIFFERENCE IN CONDITIONS:  It is a condition of this Insurance that the
Assured shall file with Underwriters representative a copy of any lease or
rental agreement pertaining to the property insured hereunder insofar as
concerns the lessors' liability for loss or damage to said property, and
coverage afforded hereunder shall be only for the difference in conditions
between those contained in said lease or rental agreement and the terms of
this Insuring Agreement.  The assured agrees to give the Underwriters
thirty days notice of any alteration, cancellation or termination of the
above mentioned lease or rental agreement pertaining to the lessors'
liability.

Subject otherwise to all terms, clauses and conditions as heretofore.

R0004/759/22/GS.CW/28.11.91

NOR00941

ENDORSEMENT attaching  and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 6

## ACCOUNTS RECEIVABLE EXTENSION

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, conditions and exclusions of the policy to which this Extension is attached, and to the following terms, conditions and exclusions, this insurance is extended to cover:

1. **SUBJECT TO INSURANCE**

   A.  All sums due to the Assured from customers', provided the Assured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

   B.  Interest charges on any loan to offset impaired collection spending repayment of such sums made uncollectible by such loss or damage;

   C.  Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

   D.  Other expenses, when reasonably incurred by the Assured in re-establishing records of accounts receivable following such loss or damage.

2. **PERILS INSURED**

   All Risks of Direct Physical Loss or Damage to the Assured's records of accounts receivable occurring during the period of the policy to which this extension is attached.

### PERILS EXCLUDED

This Extension does not insure against:-

1.  loss due to bookkeeping, accounting or billing errors or omissions;

2.  loss, the proof of which as to factual existence is dependent upon an audit of records or an inventory computation; but this shall not preclude the use of such procedures in support of claim for loss which the Assured can prove, through evidence wholly apart therefrom, is due solely to a risk of loss to records of accounts receivable not otherwise excluded hereunder;

RMK04/759/18/GS  CV/28.11.91

NOR00942

3.   loss due to alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property but only to the extent of such wrongful giving, taking, obtaining or withholding;

4.   loss due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightening.


### SUM INSURED

The Underwriters hereon shall not be liable under this Extension for more than the respective sum insured stated in the Policy in respect of each loss or series of losses arising out of one event.


### CONDITIONS

1.   RECOVERIES

     After payment of loss, all amounts recovered by the Assured on accounts receivable for which the Assured has been indemnified shall belong and be paid to the Underwriters by the Assured up to the total amount of loss paid by the Underwriters; but all recoveries in excess of such amounts shall belong to the Assured.


2.   ASSURED'S DUTIES UPON OCCURRENCE OF LOSS

     Upon the occurrence of any loss which may result in a claim hereunder, the Assured shall:

     A.   give notice thereof as soon as practicable to the Underwriters or any of their authorised agents and, if the loss is due to a violation of law, also to the police;

     B.   file detailed proof of loss, duly sworn to, with the Underwriters promptly on expiration of ninety days from the date on which the record of accounts receivable were lost or damaged.


Upon the Underwriters request, the Assured shall submit to examination by the Underwriters, subscribe the same, under oath if required, and produce for the Underwriters examination all pertinent records, all at such reasonable times and places as the Underwriters shall designate, and shall cooperate with the Underwriters in all matters pertaining to loss or claim with respect thereto, including rendering of all possible assistance to effect collection of outstanding accounts receivable.


RHM04/759/19/GS CV/28.11.91

NOR00943

3.   DETERMINATION OF RECEIVABLES: DEDUCTIONS

When there is proof that a loss covered by this policy has occurred but
Assured cannot accurately establish the total amount of accounts
receivable outstanding as of the date of such loss, such amount shall be
based on the Assured's monthly statements and shall be computed as
follows:-

A.   determine the amount of all outstanding accounts receivable at the
     end of the same fiscal month in the year immediately preceding the
     year in which the loss occurs;

B.   Calculate the percentage of increase or decrease in the average
     monthly total of accounts receivable for the twelve months
     immediately preceding the month in which the loss occurs, or such
     part thereof for which the Assured has furnished monthly statements
     to the Underwriters as compared with such average for the same months
     of the preceding year;

C.   the amount determined under (A) above, increased or decreased by the
     percentage calculated under (B) above, shall be the agreed total
     amount of accounts receivable as of the last day of the fiscal month
     in which said loss occurs;

D.   the amount determined under (C) above shall be increased or decreased
     in conformity with the normal fluctuations in the amounts of accounts
     receivable during the fiscal month involved, due consideration being given
     to the experience of the business since the last day of the last fiscal
     month for which statement has been rendered.

There shall be deducted from the total amount of accounts receivable, however
established, the amount of such accounts evidenced by records not lost or
damaged, or otherwise established or collected by the Assured, and an amount to
allow for probable bad debts which would normally have been uncollectible by
the Assured.  All unearned interest and service charges shall be deducted.

NOR00944

ENDORSEMENT attaching to and forming part of SECTION I of Policy No. 101104700

in the name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 5

### TRANSIT EXTENSION

#### INSURING CLAUSE

In consideration of the premium paid and subject to the terms and conditions of the policy to which this Extension is attached and to the following conditions and exclusions, this insurance is hereby extended to cover:-

Personal property of the Assured or property held by the Assured in trust or on commission or on consignment for which the Assured may be held legally liable while in due course of transit within the limits of the Continental United States of America (excluding Hawaii) and Canada, against All Risks of Direct Physical Loss or Damage to the property insured occurring during the period of this policy (including general average and salvage charges on shipments covered while waterbourne).

This insurance attaches from the time the property is loaded on a transporting vehicle and leaves the original point of shipment for the commencement of transit and continues during the due course of transit including temporary warehousing en route until the property is removed from the transporting vehicle at the site of the original addressee.

Coverage on export shipments not insured under Ocean Marine Policies continues until the property is loaded on an overseas vessel or aircraft. Coverage on import shipments not insured under Ocean Cargo Policies attaches when the property is removed from an overseas vessel or aircraft.

#### PERILS EXCLUDED

This Extension does not insure against:-

1) Loss or damage to personal property resulting from:-

shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in colour, texture or flavour

unless such loss is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft,

RHH04/759/15/GS CW/28.11.91.

NOR00945

2)   Loss of use, delay or loss of markets,

3)   Loss or damage caused by or resulting from moth, vermin, termites, or other insects, inherent vice, latent defect, wear, tear or gradual deterioration; contamination; rust; wet or dry rot, mould, dampness of atmosphere, smog or extremes of temperature,

4)   Loss or damage caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the Assured or other party of interest, his or their employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted),

5)   Loss or damage to the property insured occasioned by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection military or usurped power or martial law or confiscation by order of any Government or public authority,

6)   Loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused.  Nevertheless if a fire arises directly or indirectly from nuclear reaction, radiation or radioactive contamination any loss or damage arising directly from that fire shall (subject to the provisions of this Policy) be covered excluding however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that fire,

7)   Loss or damage caused by breakdown or derangement of refrigerating units.

<u>SUM INSURED</u>

The Underwriters hereon shall not be liable under this Extension for more than the Sum Insured stated in the policy in respect of each loss or series of losses arising out of one event.

<u>DEDUCTIBLE</u>

Each loss or series of losses arising out of one event shall be adjusted separately and from the amount of each such adjusted loss the sum stated in the Schedule shall be deducted.

<u>PROPERTY EXCLUDED</u>

This Extension does not cover:-

1)   (a)  Aircraft, watercraft, vehicles designed for highway use, animals, jewellery, precious stones and furs or garments trimmed with fur,

(b)  Accounts, bills, currency, money, notes, securities, deeds, evidences of debt and valuable papers,

    (c)  Data processing equipment and media including, but not limited to, film, tape, disc, drum, cell and other recording or storage media for data processing.

2)  Property in due course of ocean marine transit.

3)  Shipments by mail after delivery into the custody of the Post Office Department.

4)  Samples whilst in the care, custody or control of salesmen.

## CONDITIONS

1)  The Assured may accept without prejudice to this insurance the ordinary bills of lading or receipts issued by carriers including those containing released and/or partially released value provisions, but the Assured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

In addition it is agreed that this Policy covers loss of or damage to the property Insured:

(A)  Occasioned by the acceptance by the Insured, Insured's Agent, customer or consignee(s) or others of fraudulent bills-of-lading, shipping or messenger receipts.

(B)  Obtained by fraud or deceit perpetrated by any person(s) who may represent themselves to be the proper party or parties to receive the property for shipment or to accept it for delivery.

Valuation:

In the case of loss, the basis of adjustment, unless otherwise endorsed hereon, shall be as follows:-

(A)  Property shipped to or for account of the Insured shall be valued at actual invoice to the Insured, together with such costs and charges (including the commission of the Insured as selling agent) as may have accrued and become legally due thereon.

(B)  Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight.

(C)  Property not under invoice shall be valued at the actual cash market value at point of destination on the date of disaster, less any charges saved which would have become due and payable upon delivery at destination.

NOR00947

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 4

## VALUABLE PAPERS AND RECORDS

1. **PROPERTY COVERED:** Underwriters agree to pay on valuable papers and records, (hereinafter referred to as "property").

2. **THIS INSURING AGREEMENT INSURES AGAINST:** All risks of direct Physical Loss of or damage to the property covered, except as hereinafter provided, occurring during the period of the Policy to which this Insuring Agreement is attached.

3. **PROTECTION OF VALUABLE PAPERS AND RECORDS:** Insurance under this Insuring Agreement shall apply only while the property is contained in the premises of the Assured, and shall be kept in protective receptacle(s) at all times when the premises are not open for business, except while such property is in actual use.

4. **AUTOMATIC EXTENSION:** Such insurance as is afforded by this Insuring Agreement applies while the property is being conveyed outside the premises and while temporarily within other premises, except for storage, provided Underwriters liability for such loss or damage shall not exceed ten percent of the limits of Insurance stated in the Policy, or Fifty Thousand Dollars, whichever is less.

## EXCLUSIONS

THIS INSURING AGREEMENT DOES NOT APPLY:

1. to loss or damage due to wear and tear, gradual deterioration, vermin or inherent vice;

2. to loss or damage due to any dishonest, fraudulent or criminal act by any Assured, a Partner therein or an Officer, director or Trustee thereof, whether acting alone or in collusion with others;

3. to loss of or damage to property, if such property cannot be replaced with other of like kind or quality;

4. to loss of or damage to property held as samples or for sale or for delivery after sale;

5. to loss due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning, errors and omissions in processing or copying unless fire ensues and then only for the resultant damage of such fire.

6. to war risks or nuclear risks as excluded in the Policy to which this Insuring Agreement is attached.

RMNOA/759/13/GS CW/28.11.91

NOR00948

<u>SPECIAL CONDITIONS</u>

1.   Ownership of Property: Interests Covered

The Insured property may be owned by the Assured or held by him in any capacity; provided, the Insurance applies only to the interest of the Assured in such property, including the Assured's liability to others, and does not apply to the interests of any other person or organization in any of said property unless included in the Assured's proof of loss.

2.   Limits of Liability; Valuation; Settlement Option

The limit of Underwriters liability for loss shall not exceed the actual cash value of the property at time of loss nor what it would then cost to repair or replace the property with other of like kind and quality, nor the applicable limit of Insurance. The Underwriters may pay for the loss in money or may repair or replace the property and may settle any claim for loss of the property either with the Assured or the Owner thereof.

Application of the Insurance to property of more than one person shall not operate to increase the applicable limit of Insurance.

3.   Assured's Duties When Loss Occurs

Upon knowledge of loss or an occurrence which may give rise to a claim for loss, the Assured shall give notice thereof as soon as practicable to the Underwriters or any of its authorized Agents and, if the loss is due to a violation of law, also to the Police

4.   Definition

Property - The word "property" means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, but does not mean money or securities.

5.   Changes

Notice of any representative or knowledge possessed by any representative or by any other person shall not effect a waiver or a change in any part of this Insuring Agreement or estop Underwriters from asserting any right under the terms of this Insuring Agreement nor shall the terms of this Insuring Agreement be waived or changed, except by endorsement issued to form a part of this Insuring Agreement.

Subject otherwise to all terms, clauses, and conditions as heretofore.



RKM04/759/14/GS CW/28.11.91

NOR00949

PUBLIC ENTITY ALL LINES AGGREGATE INSURANCE POLICY

POLICY NO: 101104700

NAMED ASSURED: CITY OF WAUKEGAN AND ALL BOARDS, DEPARTMENTS, DIVISIONS, COMMISSIONS, AUTHORITIES AND ANY OTHER ACTIVITIES UNDER THE SUPERVISION OR CONTROL OF THE CITY WHETHER NOW OR HEREAFTER CONSTITUTED.

ADDRESS: 106 N. Uticia Waukegan, IL 60085

In consideration of the payment of the premium set out in Declaration 8 and in reliance upon the statements in the Application referred to in Declaration 9 and any supplementary information pertaining thereto, which shall be deemed incorporated herein, being representations which, if inaccurate, will render this policy null and void and relieve Underwriters from all liability, Underwriters agree to provide coverage as follows:-

## DECLARATIONS

1. COVERAGE:

| | | |
|---|---|---|
| Section I | A. | All Risks of Physical Loss or Damage |
| | B. | Automobile Physical Damage |
| Section II | A. | Comprehensive General Liability |
| | B. | Premises Medical Payments |
| | C. | Law Enforcement Liability |
| Section III | A. | Automobile Liability |
| | B. | Automobile Medical Payments |
| | C. | Uninsured Motorists/No Fault |

COVERAGE UNDER SECTION IV IS AFFORDED ON A CLAIMS MADE BASIS AND CONTAINS PROVISIONS WHICH MAY BE DIFFERENT FROM THOSE OF OTHER SECTIONS OF THIS POLICY.

| | | |
|---|---|---|
| Section IV | | Errors or Omissions Liability |
| Section V | A. | Worker's Compensation |
| | B. | Employer's Liability |
| Section VI | A. | Employee Dishonesty |
| | B. | Money and Securities (within premises) |
| | C. | Money and Securities (outside premises) |
| | D. | Money Orders and Counterfeit Currency |
| | E. | Depositors Forgery |

CERTAIN PROVISIONS IN THIS POLICY RESTRICT COVERAGE. THE ENTIRE POLICY SHOULD BE READ CAREFULLY TO DETERMINE YOUR RIGHTS AND DUTIES AND TO DETERMINE WHAT IS AND IS NOT COVERED.

AUGUST 1991 REVISION

RMS04/759/1/GS CW/28.11.91

- 2 -

2.  **LIMITS OF LIABILITY:**

### PART A (SPECIFIC EXCESS AGREEMENT)

Underwriters' Limits of Liability under this agreement shall not exceed the difference between

| | | | |
|---|---|---|---|
| Section I | | $1,000,000 | each and every loss and/or occurrence and in the aggregate annually separately for Flood, Earthquake and Debris Removal. |
| and/or | | | |
| Section II | A. | $1,000,000 | each and every loss and/or occurrence Combined Single Limit. |
| | | $1,000,000 | in the aggregate annually respects products/completed operations. |
| | | $2,000,000 | in the aggregate annually respects all other Section II A. coverages. |
| | B. | $   1,000 | each person |
| | | $ 100,000 | each accident |
| | C. | $1,000,000 | each and every loss and/or occurrence Combined Single Limit |
| | | $2,000,000 | in the aggregate annually. |
| and/or | | | |
| Section III | A. | $1,000,000 | each and every loss and/or occurrence Combined Single Limit. |
| | B. | $   5,000 | each person |
| | | $ 100,000 | each accident |
| | C. | Applicable state limit not exceeding the limit under Section III A above. | |
| and/or | | | |
| Section IV | | $1,000,000 | any one claim and in the aggregate annually |

R/MD6/759/2/GS/EB CW/28.11.91

- 3 -

and/or

| Section V | A. | $Not Covered | any one occurrence |
|---|---|---|---|
| | B. | $Not Covered | any one occurrence |

and/or

| Section VI | A. | $250,000 | each and every loss |
|---|---|---|---|
| | B. | $250,000 | each and every loss |
| | C. | $250,000 | each and every loss |
| | D. | $250,000 | each and every loss |
| | E. | $250,000 | each and every loss |

Ultimate net loss

and an underlying Self-Insured Retention (S.I.R.) of $25,000 each and every loss Section I or VI but $100,000 each and every loss and/or claim and/or occurrence ultimate net loss, under Section II, or III and $50,000 any one Claim Section IV.

The Assured shall be liable for only one S.I.R. in total for any monoline or multi-line loss and/or claim and/or occurrence. Multi-line losses shall be subject to the highest applicable S.I.R.

In the event of a multi-line loss involving more than one Section of coverage herein, Underwriters are liable for the difference between the sum of all S.I.R.s applicable to such loss and the individual largest applicable S.I.R. Such liability shall be in addition to the excess limits expressed above.

PART B (AGGREGATE EXCESS AGREEMENT)

Underwriter's Limit of Liability under this agreement shall be only for the Excess of Loss over an aggregate Loss Fund of $Not Covered ultimate net loss (hereinafter referred to as the "Assured's Loss Fund") in any one period of insurance, up to a further $Not Covered ultimate net loss in the aggregate for the corresponding period of insurance.

RKM04/759/3/GS CW/28.11.91



NOR00952

- 4 -

The Assured's Loss Fund and Underwriter's Limit of Liability under this
agreement shall be charged only with an amount each and every loss and/or claim
and/or occurrence ultimate net loss not exceeding the S.I.R. specified in Part
A (Specific Excess Agreement) above.

3.   MAINTENANCE DEDUCTIBLE: Not applicable

4.   RETROACTIVE DATE

In respect of Section IV : 1st January 1986

5.   TERRITORIAL SCOPE

This Insurance applies Worldwide.

6.   POLICY PERIOD

FROM: 1st November 1991     TO: 1st November 1994

both days at 12.01 a.m. Standard Time at Assured's address shown on page 1.

The Policy period stated above is further divided into the following "periods
of insurance":

Period I       1st November 1991 to 1st November 1992

Period II      1st November 1992 to 1st November 1993

Period III     1st November 1993 to 1st November 1994

7.   LOSS FUND ADJUSTMENT

The amount of the Assured's Loss Fund stated above applies to the first period
of insurance of this policy and is subject to review and change at each
Anniversary for the forthcoming period of insurance.

8.   PREMIUM       See endorsement 1 attached.

The Premium indicated in the endorsement attached is provisional and subject to
review by Underwriters at each Anniversary for the forthcoming period of
insurance, based on current Underwriting information.

9.   APPLICATION DATED:     12th August 1991.

RHH04/759/4/GS CW/28.11.91

- 5 -

## GENERAL INSURING AGREEMENTS

**I.   WHO IS AN ASSURED.**

It is agreed that the unqualified word 'Assured' wherever used in this Insurance includes not only the Named Assured but also:-

1.  any official, trustee, Director, Officer, Partner, Volunteer or employee of the Named Assured while acting within the scope of his duties as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by this Insurance, but only in respect of operations by or on behalf of the Named Assured;

2.  under Section III any person while using an owned automobile or a hired automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission, and any official of the Named Assured with respect to the use of non-owned automobiles in the business of the Named Assured.  This Insurance with respect to any person or organization other than the Named Assured does not apply:-

(a)  to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof;

(b)  to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

(c)  with respect to any hired automobile, to the owner or a lessee thereof, other than the Named Assured, nor to any agent or employee or such owner or lessee;

(d)  with respect to any non-owned automobile, to any official or employee if such automobile is owned by him or a member of the same household.

The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability.

**II.  SERVICE ORGANIZATION**

This Insurance is issued to the Assured on the express condition that the Assured undertakes to utilise at all times the service of Willis Corroon Administrative Services Corp.



RHH04/759/5/GS CG/28.11.91

NOR00954

6.

This Service Organization shall perform the following duties:

(a) Investigate and settle or defend all claims or losses - it is understood that, when so requested, the Service Organization will afford Underwriters an opportunity to be associated with the Assured and Service Organization in the defense or control of any claim, suit or proceeding.

(b) Maintenance of accurate records of all details incident to payments.

(c) Furnish monthly claims records on an approved form.

The acceptance of these services to the conclusion of all liabilities hereunder shall be a condition precedent to any liability which may attach to the Underwriters in accordance with the terms and conditions of this Insurance.

FWORDNM/11/6/SS CW/31.07.91

NOR00955

- 7 -

SECTION I - PROPERTY INSURANCE

### INSURING AGREEMENT

A - ALL RISKS OF PHYSICAL LOSS OR DAMAGE:  Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for ALL Risks of Physical Loss or Damage to All Real or Personal Property of every kind and description wherever located occurring during the period of this Insurance.

B - AUTOMOBILE PHYSICAL DAMAGE:  Underwriters agree, subject to the limitations, terms and conditions of this Insurance, to indemnify the Assured for loss or damage to Automobiles owned by the Assured or for which the Assured has an obligation to provide adequate insurance, wherever located, against All Risks of Direct Physical Loss or Damage including Collision of the Automobile with another object.

### DEFINITIONS

1.  PROPERTY OF THE ASSURED:  The term "Property of the Assured" shall mean All Real and Personal Property, including leasehold improvements or betterments which the Assured owns, property which the Assured holds on consignment or for which the Assured is liable or agrees to insure by any contractual agreement normal to its operations and the Assured's own property in course of construction.

2.  AUTOMOBILE:  The term "Automobile" shall mean any land motor vehicle, trailer or semi-trailer, including its equipment and any other equipment permanently attached thereto.  The word "Trailer" shall include semi-trailer.

3.  ULTIMATE NET LOSS:  The words "Ultimate Net Loss" in respect of this Section shall be understood to mean the loss sustained by the Assured after making deductions for all recoveries and salvages.

4.  EARTHQUAKE:  The term "Earthquake" shall mean Earthquake, volcanic eruption, subterranean fire, landslide, subsidence, earth sinking and earth rising or shifting or any such convulsion of nature.  If more than one earthquake shock shall occur within any period of seventy-two (72) hours during the term of this Insurance, such earthquake shock shall be deemed to be a single earthquake within the meaning hereof.

5.  FLOOD:  The term "Flood" shall mean Flood waters, tide and tidal water, the rising overflowing or breaking of boundaries of natural or man-made bodies of water or spray, whether wind driven or not, from any of the foregoing or by water which backs up through sewers or drains.

PWORDMH/11/7/SS CW/31.07.91



NOR00956

- 8 -

## EXCLUSIONS APPLICABLE TO SECTION I

This Section does not apply to any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy.

In addition this Section does not insure against:

a) Loss or damage caused by or resulting from moth, vermin, termites, or other insects, inherant vice, latent defect, wear, tear or gradual deterioration, contamination, rust, wet or dry rot, mould, dampness of atmosphere, smog or extremes of temperature, or loss or damage by settling, for any reason, including movement of any kind, shrinkage or expansion in building or foundation.

b) As respects Property in Course of Construction:

1. Loss or damage to property caused by or resulting from errors in design or testing of that property but not excluding resultant physical loss or damage to property covered hereunder other than the property lost or damaged by error in the design or testing of that property.

2. The repair or replacement of faulty or defective workmanship, material, or construction, but this exclusion shall not apply to physical damage to other property resulting from such faulty or defective workmanship or material.

3. Penalties for non-completion of or delay in completion of contract or non-compliance with contract conditions, nor for loss of use of occupancy howsoever caused.

c) Loss resulting from loss of use (except such loss of use coverage as is afforded under a Standard Automobile Policy in respect of Insuring Agreement B above), delay or loss of markets.

d) 1. Any loss caused by or resulting from explosion, implosion, rupture, bursting, cracking, burning or bulging of boilers, pressure vessels, or the piping or apparatus attached thereto unless fire ensues, and then only for the actual loss or damage caused by such ensuing fire.

2. Breakdown or derangement of machinery.

e) Inventory shortage, mysterious disappearance or loss resulting from any kind of infidelity dishonesty or fraud on the part of the Assured or any of his employees, whether alone or in collision with others except from the perils covered in Section VI (Money and Securities - Broad Form) of this Insurance.

f) Loss or damage to electrical appliances, devices, fixtures or wiring caused by artifically generated electrical current, unless fire or explosion ensues, and then only for the actual loss or damage caused by such ensuing fire or explosion. 

PVORINM/11/8/SS CX/31.07.91

NOR00957

- 9 -

g) Loss or damage to real and personal property caused by:-

processing, renovating, repairing or faulty workmanship thereon, unless fire and/or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

h) Loss or damage to personal property resulting from:-

shrinkage, evaporation, loss of weight, leakage, depletion, erosion, marring, scratching, exposure to light, or change in colour, texture or flavour, unless such loss or damage is caused directly by fire or the combating thereof, lightning, windstorm, hail, explosion, strike, riot or civil commotion, aircraft, vehicles, breakage of pipes or apparatus, sprinkler leakage, vandalism and malicious mischief, theft or attempted theft.

i) Loss or damage to real property resulting from:-

Cracking, bulging, expansion of pavements, foundations, walls, floors or ceilings, unless one or more of the building or structure's walls or roofs is physically broken and falls to a lower level. If however direct loss by liquids or gases not otherwise excluded, or collapse results, then this policy shall cover only the resulting loss. Extremes or changes of temperature (except to water piping or space heating equipment due to freezing) or changes in relative humidity, all whether atmospheric or not.

j) Any increase of loss due to interference with rebuilding, repairing, or replacing the property or with the resumption or continuation of business at the described premises caused by strikers or other persons.

k) Any increase in loss due to the suspension, lapse or cancellation of any lease or license, contract or order.

PROPERTY EXCLUDED FROM COVERAGE HEREUNDER:

Watercraft over twenty six feet in length, birds, land, aircraft, standing timber, shrubs, plants, growing crops, retaining walls not constituting part of a building when loss is caused by ice or water pressure, underground mines and mining property located below the surface of the ground and any property undergoing insulation breakdown tests; accounts, bills, currency, deeds, evidences of debt or title, money, notes or securities, jewellery, furs, precious metals or precious stones, other than as covered under Section VI herein or by extension hereon.

SPECIFIC CONDITIONS

1. VALUATION: The Underwriters shall not be liable for loss or damage in excess of:

1) On buildings and structures and general contents - the cost as of the date of loss or replacement of the damaged or destroyed property in a new condition with materials of like size, kind and quality, all subject to the following conditions:

TWORDMH/11/9/88 CW/31.07.91



NOR00958

-10-

    a.    If property damaged or destroyed is not repaired, rebuilt or replaced on the same or another site within two years after the loss or damage, Underwriters shall not be liable for more than the actual cash value as of the date of loss (ascertained with proper deduction for depreciation) of the property destroyed.

    b.    The total liability of Underwriters under this policy for loss to property included hereon shall not exceed the smallest of the following:

        1.    the cost to repair, or

        2.    the cost to rebuild or replace, all as of the date of loss, on the same site, with new materials of like size, kind and quality, or

        3.    the actual expenditure incurred in rebuilding, repairing or replacing on the same or another site.

2)    On automobiles and mobile equipment - the actual cash value of the automobile at the time of loss or the cost to repair whichever is the less.

3)    On stock in process at the value of raw material and labour expended plus the proper proportion of overhead charges.

4)    On finished goods manufactured by the Assured, at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the property would have been subject had no loss occurred.

5)    On property of others at the amount for which the Assured is liable but in no event to exceed the replacement cost value.

6)    On improvements and betterments, at replacement cost, if actually replaced within two years after the loss or damage; if not so replaced, at actual cash value on date of loss.

7)    On accounts, manuscripts, mechanical drawings and other records and documents not specifically excluded, at value blank plus cost of transcribing.

8)    On patterns and dyes, at replacement cost if actually replaced, otherwise at actual cash value on date of loss.

9)    On Fine Arts, at the appraised value of the article.

2.    DEBRIS REMOVAL: This insurance covers the expense of removal from the premises containing the property insured hereunder of debris remaining after any loss hereby insured against, except that there shall be no liability assumed for the expense of removal of any foundations.

3.    REMOVAL CLAUSE: This Insurance covers the expense and damage to property removed from the premises which results from said property being endangered by the perils insured against.

PROPERM/11/10/SS CW/31.07.91

NOR00959

11

4.   APPRAISAL: In the event the Assured and Underwriters are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of reimbursement to be paid, each party shall name a competent and disinterested appraiser and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire.  The appraisers together shall obtain reconstruction estimates, and calculate the amounts of reimbursement due, and failing to agree, shall submit their differences to the umpire.

The award, in writing, duly verified by any two shall determine the points in question.  Both parties shall pay the cost of their own appraisers and equally pro rate the cost of the umpire.

5.   CIVIL AUTHORITY CLAUSE: Notwithstanding anything contained in this Insurance, property which is insured under this Insurance is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destruction is caused or contributed to by war, invasion, revolution, rebellion, insurrection or other hostilities or warlike operations.

6.   ORDINANCE DEFICIENCY CLAUSE: Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any State or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements.  If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

7.   EXPENSE TO REDUCE OR PREVENT LOSS: The Assured shall employ every reasonable means to protect the property from further damage, including the prompt execution of temporary repairs where necessary for such protection and the separation of damaged from undamaged personal property.  Underwriters shall be liable for reasonable expenses so incurred to minimise insured loss, but any payment under this provision shall not serve to increase the limit of liability that would otherwise apply at the time and place of loss, nor shall such expenses exceed the amount by which the loss is reduced.

8.   JOINT LOSS CLAUSE: Where this policy and a Boiler and Machinery policy apply, and the Boiler and Machinery policy also contains a joint loss clause or similar wording, and there is a lack of agreement with respect to

(1)  whether such damage or destruction was caused by a peril insured against by this policy or by an accident insured against by such Boiler and Machinery Insurance Policy, or

(2)  the extent of a participation of this policy and of such Boiler and Machinery Insurance Policy in a loss which may be insured against, partially or wholly, by either or both policies.

Underwriters will, upon written request of the Assured, agree to he following loss adjustment procedure:



FPORDNM/11/11/SS CW/31.07.91

NOR00960

- 12 -

Such loss shall be settled by payment of the full amount thereof to the
Assured, each insurer to contribute the sum to which it admits liability plus
an amount equal to one-half (1/2) of the amount of loss that is in disagreement
between the two insurers; further provided that, if one-half (1/2) the amount
of loss that is in disagreement exceeds the minimum amount remaining payable
under either policy, each insurer will pay a sum equal to the amount of
liability remaining under that policy, within the minimum amount.

The Assured will cooperate in furnishing information and technical data as may
be required by insurers in order that they may determine the final
apportionment of the loss between them.

This agreement does not change any of the terms and conditions of the policies
issued to the Assured by the insurers.

The insurers agree with each other to submit the amount of the loss that is in
disagreement to arbitration. The arbitrators shall be three in number, one of
whom shall be appointed by the Boiler insurer, one of whom shall be appointed
by Underwriters hereon, and one of whom shall be appointed by consent of the
other two, and the decision by the arbitrators shall be subject to appeal to
the appropriate court or courts.



PWORINH/11/12/SS_CW/31.07.91

NOR00961

- 13 -

## SECTION II - COMPREHENSIVE GENERAL LIABILITY

### INSURING AGREEMENTS

This Section applies only to bodily injury, personal injury or property damage which occur during the policy period and arise out of an occurrence which takes place within the territorial scope of the Policy.

A - COMPREHENSIVE GENERAL LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Assured under contract or agreement, for damage direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss', on account of personal injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment), and/or damage to or destruction of property or the loss of use thereof; arising out of any occurrence from any cause including, but not limited to, products liability and/or completed operations, host/liquor liability, employee benefit liability or incidental malpractice happening during the period of this insurance except as covered under Section II B & C.

B - PREMISES MEDICAL PAYMENTS: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all expenses incurred by the Assured for such immediate medical and surgical relief to others (excepting employees of the Assured injured in the course of their employment, or students) as shall be necessary at the time of an occurrence on account of personal injury, provided such personal injury arises out of operations with respect to which the Assured is afforded coverage for personal injury liability under this policy except as covered under Section II A & C.

C - LAW ENFORCEMENT LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of errors, omissions or negligent acts arising out of the performance of the Assured's duties while acting as a law enforcement official or officer in the regular course of public employment as hereinafter defined, arising out of any occurrence from any cause on account of Personal Injury, Bodily Injury, Property Damage or First Aid, happening during the period of this insurance except as covered under Section II A and B.

Notwithstanding Insuring Agreements A, B and C above Underwriters shall not be liable to indemnify the Assured for any sum which the Assured shall be obligated to pay if a judgement or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured.

### DEFINITIONS

1.  PERSONAL INJURY - The term 'personal injury' wherever used herein, shall mean Bodily Injury, Mental Anguish, Shock, Sickness, Disease, Disability, Wrongful Eviction, Malicious Prosecution, Discrimination, Humiliation, Invasion of Rights of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of Property, Erroneous Service of Civil Papers, Assault and Battery and Disparagement of Property. In addition respects Insuring Agreement C only, "Personal Injury" shall mean False Arrest, False Imprisonment, Detention and Violation of Civil Rights arising out of Law Enforcement activities.

FYORDNW/11/13/SS CW/31.07.91

NOR00962

- 14 -

2. BODILY INJURY - the term 'bodily injury' shall mean physical injury to any person (including death) and any mental anguish or mental suffering associated with or arising from such physical injury.

3. PROPERTY DAMAGE - The term 'Property Damage' wherever used herein shall mean damage to or destruction or loss of property, excluding, however, damage to property owned by the Assured, but including damage to structures or portions thereof rented to or leased to the Assured, including fixtures permanently attached thereto.

4. PRODUCTS LIABILITY - The term 'products liability' wherever used herein means bodily injury or property damage arising out of the Assured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Assured and after physical possession of such products has been relinquished to others.

COMPLETED OPERATIONS - The term 'Completed Operations' wherever used herein means bodily injury or property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Assured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:-

(a) when all operations to be performed by or on behalf of the Assured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the Assured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organisation other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

5. HOST/LIQUOR LIABILITY - The term "host/liquor liability" wherever used herein means indemnification for the Assured's liability for the sale or distribution of alcoholic beverage by reason of any local, State or Federal liquor control laws in force at the time of the occurrence (as defined herein) and includes indemnity for loss of means of support.

6. INCIDENTAL MALPRACTICE - The term 'incidental malpractice' shall mean emergency medical services rendered or which should have been rendered to any person or persons (other than employees of the Assured injured during the course of their employment) by any person employed by or acting on behalf of the Assured. However "incidental malpractice" shall not include the rendering of, or failure to render, professional health care services other than those provided by nurses, ambulance crew, emergency medical technicians and paramedics.

FWORDNM/11/14/SS CV/31.07.91

NOR00963

- 15 -

7.  MEDICAL PAYMENTS - the term 'Medical Payments' shall mean expenses for necessary medical, surgical, X-Ray and dental services, ambulance, hospital, professional nursing and funeral services.

8.  OCCURRENCE - the term 'occurrence' wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which result in personal injury or damage to property during the policy period.  All personal injuries to one or more persons and/or property damage arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one occurrence.

9.  ULTIMATE NET LOSS - the term 'ultimate net loss' shall mean the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.

Ultimate Net Loss shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, expenses for doctors and nurses also law costs, premiums on attachment of appeal bonds, expenses for lawyers and investigators and other persons for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder.

The salaries, expenses or administrative costs of the assured or the assured's employees or of Corroon & Black Management Inc. are not to be included within the meaning of Ultimate Net Loss and are to be paid by the assured.

10. AUTOMOBILE - the word "Automobile" shall mean a land motor vehicle, trailer or semi-trailer, licensed for road use.

11. With respect to Insuring Agreement C

a)  the term PUBLIC EMPLOYMENT means employment of law enforcement officers by the Law Enforcement Department or Agency of the Assured.

b)  the term FIRST AID means the rendering of emergency medical treatment at the time of an accident and only when other licensed medical professional care is not immediately available.

c)  coverage should be understood to include the Public Entity or subdivision of which the insured law enforcement department or agency is a part, department or bureau and Public Officials thereof; but only with respect to claims made against such Public Entity or such Public Officials thereof arising out of law enforcement activities as covered under this agreement.

PFORISM/11/15/SS CW/31.07.91

NOR00964

-16-

## EXCLUSIONS APPLICABLE TO SECTION II

THIS SECTION DOES NOT APPLY

(a) to any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy.

(b) to personal injury or property damage which the Assured intended or expected or reasonably could have expected.

(c) except with respect to operations performed by independent contractors, to the ownership, maintenance or use, including loading or unloading of watercraft over twenty six feet in length.

(d) to damage or destruction of property owned by the Assured or damage to property in the Care, Custody or Control of the Assured.

(e) to the withdrawal, inspection, repair, replacement, or loss of use of the Assured's products or work completed by or on behalf of the Assured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

(f) to liability arising out of the ownership, maintenance, loading or unloading, use or operation of any aircraft, airfields, runways, hangers, buildings or other properties in connection with aviation activities, other than premises liability in buildings to which the general public is admitted.

(g) to any obligation for which the Assured may be held liable under any workers' compensation, unemployment compensation, disability benefits law, employers liability or under any similar law or to bodily injuries to any employee or to any liability for indemnity or contribution brought by any party for bodily injuries to any employee.

(h) to any liability arising out of or in any way connected with the operation of the principles of eminent domain, condemnation proceedings, or inverse condemnation proceedings, or inverse condemnation, by whatever name called, whether such liability accrues directly against the Assured or by virtue of any agreement entered into by or on behalf of the Assured.

(i). to any "Asbestos Claim" as defined herein.

"Asbestos Claim" shall mean any claim based upon or arising out of the manufacture, sale distribution, handling, installation, repair, removal, disposal or use of any product containing asbestos in any form.

(j) to any claim resulting from the sexual or physical abuse or molestation of any person by the Assured or any volunteer worker or employee of the Assured.

(k) to any claim arising out of discrimination related to employment or wrongful termination of any person.

(l) to Automobile Liability

FPOLDMH/11/16/SS GV/31.07.91

- 17 -

(m) to any liability arising out of the rendering of or failure to render the following professional services:

    a. medical, surgical, dental x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith.

    b. furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

    c. service by any person as a member of a formal accreditation or similar professional board or committee of the assured, or as a person charged with the duty of executing directives of any such board or committee.

However, this exclusion shall not apply to incidental malpractice as defined herein.

And as respects Insuring Agreement C to

(n) liability assumed by the Assured under any contract or agreement whether written, oral or implied except mutual law enforcement assistance agreements between political subdivisions.

(o) To any investigatory, disciplinary or criminal proceedings against an individual Assured except that Underwriters may at their own option associate counsel in the defense of any such investigatory, administrative or disiplinary proceeding. Should Underwriters elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights Underwriters may have pursuant to the terms, conditions, exclusions and limitations of this policy.

SPECIFIC CONDITION

CROSS LIABILITY: In the event of liability being incurred by reason of injury suffered by any employee of one Assured which does not arise out of the injured employee's employment, for which another Assured is liable, then this Policy shall indemnify the Assured for such liability in the same manner as if separate policies had been issued to each Assured.

In the event of liability being incurred by reason of Property Damage to property belonging to any Assured for which another Assured is liable, then this Policy shall indemnify such Assured in the same manner as if separate Policies had been issued to each Assured.

Nothing contained in this Condition shall operate:-

    a) to increase Underwriters' limits of liability

    b) to include coverage for an Assured who sustains Property Damage as a consequence of its own employee's acts.

PUGH&CO/11/17/SS CW/31.07.91

NOR00966

- 18 -

## SECTION III - AUTOMOBILE LIABILITY

### INSURING AGREEMENTS

A - AUTOMOBILE LIABILITY:  Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss', arising out of any occurrence on account of bodily injury including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment) and/or damage to or destruction of property or the loss of use thereof, arising out of the ownership, maintenance or use of any automobile.

B. - AUTOMOBILE MEDICAL PAYMENTS:  Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all expenses incurred by the Assured during the policy period for such immediate medical and surgical relief to others (excepting employees of the Assured injured in the course of their employment, or students) as shall be necessary at the time of an occurrence on account of personal injury, provided such personal injury arises out of operations with respect to which the Assured is afforded coverage for personal injury liability under this policy.

C - UNINSURED MOTORIST:  Uninsured Motorist Insurance shall be afforded in respect of any occurrence to the minimum extent permitted by the law of the State in which each owned or hired automobile is principally garaged.

NO FAULT INSURANCE - shall be afforded in respect of any occurrence to the minimum extent required of the Assured by law and which is included for coverage within all other terms and conditions of this policy.

### DEFINITIONS

1. BODILY INJURY - the term 'Bodily Injury' shall mean physical injury to any person (including death) and any mental anguish or mental suffering associated with or arising from such physical injury.

2. PROPERTY DAMAGE - The term 'Property Damage' wherever used herein shall mean damage to or destruction or loss of property; excluding, however, damage to property owned by the Assured, or damage to property of others in the care, custody or control of the Assured or property which is purchased by the Assured under a contract which provides that the title remain with the sellers until payments have been completed, the liability of Underwriters being limited to the amount of payments outstanding.  Such property damage shall arise out of an occurrence as defined herein.

3. AUTOMOBILE - the word 'Automobile' shall mean a land motor vehicle, trailer or semi-trailer, licensed for road use

4. MEDICAL PAYMENTS - the term 'Medical Payments' shall mean expenses for necessary medical, surgical, X-Ray and dental services, ambulance, hospital, professional nursing and funeral services.

PHORDNH/11/18/58 CW/21.07.91

NOR00967

19

5.   OCCURRENCE – the term 'occurrence' wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which result in bodily injury or damage to property during the policy period. All bodily injuries to one or more persons and/or property damage arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one occurrence.

6.   ULTIMATE NET LOSS – the term 'ultimate net loss' shall mean the total sum which the Assured becomes obligated to pay by reason of bodily injury or property damage claims, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.

Ultimate Net Loss shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, expenses for doctors and nurses also law costs, premiums on attachment of appeal bonds, expenses for lawyers and investigators and other persons for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder.

The salaries, expenses or administrative costs of the assured or the assured's employees or of Corroon & Black Management Inc. are not to be included within the meaning of Ultimate Net Loss and are to be paid by the assured.

## SPECIFIC CONDITIONS

1)   CROSS LIABILITY:   In the event of liability being incurred by reason of bodily injury suffered by any employee of one Assured which does not arise out of the injured employee's employment, for which another Assured is liable, then this Policy shall indemnify the Assured for such liability in the same manner as if separate policies had been issued to each Assured.

In the event of liability being incurred by reason of Property Damage to property belonging to any Assured for which another Assured is liable, then this Policy shall indemnify such Assured in the same manner as if separate Policies had been issued to each Assured.

Nothing contained in this Condition shall operate–

a)   to increase Underwriters' limits of liability

b)   to include coverage for an Assured who sustains Property Damage as a consequence of its own employee's acts.

2)   This Section does not apply to any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy.



FUQRINH/11/19/SS CX/31.07.91

NOR00968

- 21 -

EXCLUSIONS APPLICABLE TO SECTION IV

This Section does not apply to any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy.

In addition this section shall not apply to any Claim made against the Assured:

A.  based upon or attributable to them gaining in fact any personal profit or advantage to which they were not legally entitled including remuneration paid in violation of law as determined by the Courts;

B.  brought about or contributed to by fraud, dishonesty or criminal act of any Assured;

C.  based upon or attributable to the rendering or failure to render any opinion, treatment, consultation or service if such opinion, treatment, consultation or service was rendered or failed to have been rendered while the Assured was engaged in any activity for which they received compensation from any source other than as a Public Entity or an Employee of a Public Entity;

D.  arising out of estimates of probable costs or cost estimates being exceeded or for faulty preparation of bid specifications or plans or to injury to, destruction or disappearance of any tangible property (including money) or the loss of use thereof;

E.  arising out of the failure to supply a specific amount of electrical power or fuel arising out of the interruption of the electrical power or fuel supply;

F.  for which the Assured are entitled to indemnity and/or payment by reason of having given notice of any circumstances which might give rise to a claim under any policy or policies the term of which has commenced prior to the inception date of this Policy;

G.  arising out of or in any way involving any employee benefit plan of the Assured;

H.  resulting from an occurrence which commences prior to the Retroactive Date set out in Declaration 4;

I.  for bodily injury or property damage;

J.  arising out of law enforcement activities;

K.  to any liability arising out of or in any way connected with the operations of the principles of eminent domain, condemnation proceedings, or inverse condemnation proceedings, or inverse condemnation, by whatever name called, whether such liability accrues directly against the Assured or by virtue of any agreement entered into by or on behalf of the Assured.

L.  to liability arising out of the ownership, maintenance, loading or unloading, use or operation of any aircraft, airfields, runways, hangers, buildings or other properties in connection with aviation activities.

PHOENIX/11/21/88 CW/31.07.91

NOR00970

- 22 -

### SPECIFIC CONDITIONS

1.  LIMIT OF LIABILITY:  Loss or losses arising out of the same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts giving rise to a claim or claims shall be construed as a single loss and only one self-insured retention amount shall apply thereto.

2.  CROSS LIABILITY:  In the event of Claims being made by reason of personal injury suffered by any employee of one Assured which does not arise out of the injured employee's employment, for which another Assured is liable, then this Policy shall cover the Assured against whom such Claim is made in the same manner as if separate policies had been issued to each Assured.

    In the event of Claims being made by reason of Property Damage to property belonging to any Assured for which another Assured is liable, then this Policy shall cover such Assured against whom such Claim is made in the same manner as if separate Policies had been issued to each Assured.

    Nothing contained in this Condition shall operate:

    a)  to increase Underwriters' limits of liability

    b)  to include coverage for an Assured who sustains Property Damage as a consequence of its own employees' acts.

3.  EXTENDED REPORTING PERIOD:  In the event of cancellation or non-renewal of this policy or of this section of the policy (other than cancellation for non payment of premium or violation of policy terms and conditions) the assured shall have the option of:

    a)  upon payment of an additional premium of $12,500 of purchasing an "Extended Reporting Period" extending such insurance as is afforded by this Section in respect of Claims First Made within a maximum period of 24 months following immediately upon the effective date of such cancellation or non-renewal, or

    b)  if the Assured does not purchase the "Extended Reporting Period". underwriters shall extend such insurance as is afforded by this Section to apply to Claims First Made against the Assured during the 30 days following immediately upon the effective date of such cancellation or non-renewal but only by reason of a claim for injuries or damages which commences and was sustained subsequent to the Retroactive Date set out in Declaration 4 and prior to the effective date of such cancellation or non-renewal, and which is otherwise covered by this policy.  The "Extended Reporting Period" for claims made subsequent to termination of the policy period, if purchased, must be endorsed hereto.

    If however, this policy is immediately succeeded by similar claims made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than that shown in Declaration 4, the succeeding policy shall be deemed to be a renewal of this policy, and the Assured shall have no right to secure an "Extended Reporting Period" from underwriters.

RHM04/759/6/GS CU/28.11.91

NOR00971

- 23 -

The Assured's right to purchase the "Extended Reporting Period" must be exercised by notice in writing to underwriters not later than thirty (30) days after the cancellation or termination date of this policy, and must include tender of the entire premium for the "Extended Reporting Period". If such notice and tender is not so given the Assured shall not at a later date be able to exercise the right to purchase the "Extended Reporting Period".

PHORUNK/11/23/SS CV/31.07.91

NOR00972

- 25 -

The amounts incurred under this Insuring Agreement are payable by Underwriters in addition to the Limit of Indemnity of this Section.

IV.  Definitions

(a)  Workers' Compensation Law.  The unqualified term "Workers' Compensation Law" means the Workers' Compensation Act of each State named in Condition 1, including extra territorial provisions of the act, the Workers Compensation Act of a State not named in Condition 1; including extra territorial provisions of the Act, the Longshoremen's and Harbor Workers' Compensation Act, the Federal Employees' Compensation Act, and any separate occupational disease act.

(b)  State.  The word "State" means any State or territory of the United States of America and the District of Columbia.

(c)  Bodily injury by accident; bodily injury by disease.  The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident".

The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident".

(d)  Assault and battery.  Under Paragraph (b) of Insuring Agreement I, assault and battery shall be deemed an accident unless committed by or at the direction of the Employer.

(e)  Damages because of bodily injury by accident or disease, including death at any time resulting therefrom.  The words "damages because of bodily injury by accident or disease, including death at any time resulting therefrom", in Paragraph (b) of Insuring Agreement I include damages for care and loss of services and damages for which the Employer is liable by reason of suits or claims brought against the Employer by others to recover the damages obtained from such others because of such bodily injury sustained by employees of the Employer arising out of and in the course of their employment.

(f)  Loss.  The word "Loss" shall mean only such amounts as are actually paid in cash by the Employer in payment of benefits under the Workers' Compensation Law, in settlement of claims or in satisfaction of awards or judgments; but the word "Loss" shall not include claim expenses; salaries paid to employees of the Employer, nor annual retainers.

(g)  Claims Expenses.  The term "Claims Expenses" shall mean court costs, interest upon awards and judgements, and allocated investigation, adjustments, and legal expenses, but the term "Claim Expenses" shall not include salaries paid to employees of the Employer nor annual retainers.

NOR00974

26

(h) Remuneration. The term "Remuneration" shall mean all salaries, wages, earings for overtime, piece work or contract work, bonuses or allowances and also the cash equivalents of all board, merchandise, store certificates, credits or other substitutes for cash earned by all employees of the Employer including executive officers subject to any and all limitations stated in the appropriate manual of Workers' Compensation and Employer's Liability Insurance.

## EXCLUSIONS APPLICABLE TO SECTION V

This Section does not apply:

(a) To any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy.

(b) To loss arising out of operations (1) as respects which the Employer carries a full coverage Workers' Compensation or Employers' Liability policy; or (2) as respects which the Employer has rejected any Workers' Compensation Law;

(c) Unless required by law or described herein, to domestic employment or to farm or agricultural employment;

(d) Under paragraph (b) of Insuring Agreement 1, to liability assumed by the Employer under any contract or agreement;

(e) Under Paragraph (b) of Insuring Agreement 1, (1) to punitive or exemplary damages on account of bodily injury to or death of any employee in violation of law, or (2) with respect to any employee employed in violation of law with the knowledge or acquiescence of the Employer or any executive officer thereof;

(f) Under Paragraph (b) of Insuring Agreement 1, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the Employer for damages because of such injury or death resulting therefrom;

(g) Under Paragraph (b) of Insuring Agreement 1, to any obligation for which the Employer or any carrier as his insurer may be held liable under any Workers' Compensation or occupational disease law or a State designated in Condition 1, any other Workers' Compensation or occupational disease law, any unemployment compensation or disability benefits law or under any similar law.

## CONDITIONS

1. SELF-INSURERS STATUS: The Employer agrees to duly qualify as a self-insurer by compliance with the provisions of the Workers' Compensation and/or Occupational Disease Law respecting self-insurance in the State of _____ and shall continue to maintain said status throughout the period of this Insurance provided, however, Underwriters shall not be relieved of their obligations hereunder because of a breach of this condition until (1) the Assured becomes insured with respect to his Workers' Compensation and/or Occupational Disease Liability or (2) the expiration of a period of thirty days after date of the notice served upon the Assured by the Industrial Commission terminating his status as a self-insurer, which ever occurs first.

PWORLDW/11/26/88 CW/31.07.91

NOR00975

- 27 -

If any employee is injured while engaged in the business operations of the Assured outside the State of _____ this Insurance shall apply to the Assured on account of such injuries irrespective of whether such liability is greater than it would have been had the injuries been sustained within said State.

2. COMMUTATION:  Claims hereunder, not finally settled, for weekly or periodical payment for compensation to employees (or their dependents) as a result of death or injury shall be notified with full particulars by the Assured to Underwriters within two years from the expiration date of this Insurance and Underwriters may, if they so elect, then or at any time thereafter submit one or more of such claims to an Actuary or Appraiser, to be mutually appointed by the Assured and Underwriters, and Underwriters shall at their option pay a lump sum to be fixed by the Actuary or Appraiser, which payment shall constitute a full and final release of Underwriters' liability for such claim or claims, provided however that such lump sum payment shall not constitute a full and final release of Underwriters liability if subsequent to such lump sum payment any supplemental award is made increasing the amount of compensation benefits payable to the employee or his/her dependents and that any additional claim may then be recommuted at Underwriters' option and Underwriters may discharge any additional liability by another lump sum payment.

PVORDNN/11/27/SS CV/31.07.91.

NOR00976

- 28 -

## SECTION VI - CRIME INSURANCE

### INSURING AGREEMENTS

Underwriters agree, subject to the limitations, terms and conditions of this section, to indemnify the Assured as follows:-

#### Employee Dishonesty/Faithful Performance Coverage

A) Loss of Money, Securities and other property which the Assured shall sustain to an amount not exceeding the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement A, resulting directly from one or more fraudulent or dishonest acts committed by an Employee acting alone or in collusion with others or from the failure of an Employee to perform faithfully his duties or to account properly for all monies and property received by virtue of his position of employment.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:

a) to cause the Assured to sustain such loss and

b) to obtain financial benefit for the Employee or for any other person or organisation intended by the Employee to receive such benefit other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

#### Loss Inside The Premises Coverage

B) Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof within the Premises or within any Banking Premises or similar recognized places of safe deposit.

Loss of (a) other property by Safe Burglary or Robbery within the Premises or attempt thereat and (b) a locked cash drawer, cash box or cash register by felonious entry into such container within the Premises or attempt thereat or by felonious abstraction of such container from within the Premises or attempt thereat.

Damage to the Premises by such Safe Burglary, Robbery or felonious abstraction, or by or following burglarious entry into the Premises or attempt thereat provided with respect to damage to the Premises the Assured is the owner thereof or is liable for such damage.

#### Loss Outside The Premises Coverage

C) Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof outside the Premises while being conveyed by a Messenger or any armored motor vehicle company or while within the living quarters in the home of any Messenger.

Loss of other property by Robbery or attempt thereat outside the Premises while being conveyed by a Messenger or any armored motor vehicle company or by theft while within the living quarters in the home of any Messenger.

NOR00977

- 29 -

Money Orders and Counterfeit Paper Currency Coverage

D) Loss due to the acceptance in good faith, in exchange for merchandise, Money or services of any post office or express money order issued or purporting to have been issued by any post officer or express company, if such money order is not paid upon presentation or due to the acceptance in good faith in the regular course of business of counterfeit United States or Canadian paper currency.

Depositors Forgery Coverage

E) Loss which the Assured or any bank which is included in the Assured's proof of loss and in which the Assured carries a checking or savings account as their respective interests may appear, shall sustain through forgery or alteration of on or in any check, draft, promissory note, bill of exchange or similar written promise, order or direction to pay a sum certain in money made or drawn by or drawn upon the Assured, or made or drawn by one, acting as agent of the Assured or purporting to have been made or drawn as hereinbefore set forth, including

(a) any check or draft made or drawn in the name of the Assured payable to a fictitious payee and endorsed in the name of such fictitious payee

(b) any check or draft procured in a face to face transaction with the Assured or with one acting as agent of the Assured by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one so impersonated and

(c) any payroll check, payroll draft or payroll order made or drawn by the Assured, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from such payee

whether or not any endorsement mentioned in (a), (b) or (c) be a forgery within the law of the place controlling the construction thereof.

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

The Assured shall be entitled to priority of payment over loss sustained by any bank aforesaid. Loss under this Insuring Agreement whether sustained by the Assured or such bank, shall be paid directly to the Assured in its own name, except in cases where such bank shall have already fully reimbursed the Assured for such loss. The liability of Underwriters to such bank for such loss shall be a part of and not in addition to the amount of insurance applicable to the Assured's office to which such loss would have been allocated had such loss been sustained by the Assured.



PFORDNR/11/25/55 CW/31.07.91

NOR00978

-30-

If the Assured or such bank shall refuse to pay any of the foregoing instruments made or drawn as hereinbefore set forth, alleging that such instruments are forged or altered and such refusal shall result in suit being brought against the Assured or such bank to enforce such payment and Underwriters shall give its written consent to the defense of such suit, then any reasonable attorney's fees, court costs, or similar legal expenses incurred and paid by the Assured or such bank in such defense shall be construed to be a loss under this Insuring Agreement and the liability of Underwriters for such loss shall be in addition to any other liability under this Insuring Agreement.

### GENERAL AGREEMENTS

#### Joint Insured

I)   If more than one Assured is covered under this Section the Assured first named shall act for itself and for every other Assured for all purposes of this Section. Knowledge possessed or discovery made by any Assured or by any partner or officer thereof shall, for the purposes of Section 7 and 12 constitute knowledge possessed or discovery made by every Assured.

Cancellation of the insurance hereunder as respects any Employee as provided in Section 12 shall apply to every Assured. If prior to the cancellation or termination of this Section or any Insuring Agreement hereof this Section is cancelled or terminated as to any Assured, there shall be no liability for any loss sustained by such Assured unless discovered within one year from the date of such cancellation or termination. Payment by Underwriters to the Assured first named of any loss under this Section shall fully release Underwriters on account of such loss. If the Assured first named ceases for any reason to be covered under this Section, then the Assured next named shall hereafter be considered as the Assured first named for all purposes of this Section.

#### Loss Under Prior Bond or Policy

II)  If the Coverage of an Insuring Agreement of this Section, other than Insuring Agreement X is sustained for any prior bond or policy of insurance carried by the Assured or by any predecessor in interest of the Assured, which prior bond or policy is terminated, cancelled or allowed to expire as of the time of such substitution, Underwriters agree that such Insuring Agreement applies to loss which is discovered as provided in Section I of the Conditions and Limitations and which would have been recoverable by the Assured or such predecessor under such prior bond or policy except for the fact that the time within which to discover loss thereunder had expired provided:

(1)  the insurance under this General Agreement II shall be part of and not in addition to the amount of insurance afforded by the applicable Insuring Agreement of this Section.

(2)  such loss would have been covered under such Insuring Agreement had such Insuring Agreement with its agreements, conditions and limitations as of the time of such substitution been in force when the acts or events causing such loss were committed or occurred and

NOR00979

-31-

(3)  recovery under such Insuring Agreement on account of such loss shall
in no event exceed the amount which would have been recoverable under
such Insuring Agreement in the amount which it is written as of the
time of such substitution, had such Insuring Agreement been in force
when such acts or events were committed or occurred or the amount
which would have been recoverable under such prior bond or policy had
such prior bond or policy continued in force until the discovery of
such loss, if the latter amount be smaller.

Insuring Agreement E shall also cover loss sustained by the Assured at any
time before the termination or cancellation of Insuring Agreement E which
would have been recoverable under the coverage of some similar form of
forgery insurance (exclusive of fidelity insurance) carried by the Assured
or any predecessor in interest of the Assured had such prior forgery
insurance gives all of the coverage afforded under Insuring Agreement E
provided with respect to loss covered by this paragraph:

(a)  the coverage of Insuring Agreement E is substituted on or after the
date hereof for such prior forgery coverage and the Assured or such
predecessor, as the case may be, carried such prior forgery coverage
on the office at which such loss was sustained continuously from the
time such loss was sustained to the date the coverage of Insuring
Agreement E was substituted herefor.

(b)  at the time of discovery of such loss the period for discovery of
loss under all such prior forgery insurance has expired and

(c)  if the amount of insurance carried under Insuring Agreement E
applicable to the office at which such loss is sustained is larger
than the amount applicable to such office under such prior forgery
insurance and in force at the time such loss is sustained the
liability hereunder for such loss shall not exceed the smaller amount.

THE FOREGOING INSURING AGREEMENTS AND GENERAL
AGREEMENTS ARE SUBJECT TO THE FOLLOWING
CONDITIONS AND LIMITATIONS

1.  **Policy Period, Territory, Discovery**

Loss is covered under this Section only if discovered not later than one
year from the end of the Policy Period.

Subject to General Agreement II Insuring Agreement E applies only to loss
sustained during the Policy Period.

2.  **Exclusions applicable to Section VI**

This Section does not apply

(a)  to any claim for damages, whether direct or consequential, or for any
cause of action which is covered under any other Section of this
Policy.

(b)  to loss due to any fraudulent, dishonest or criminal act by any
Assured or a partner therein, whether acting alone or in collusion
with others;

TWORINMH/11/31/SS CW/31.07.91

NOR00980

- 32 -

(c) under Insuring Agreement A to loss or to that part of any loss as the case may be the proof of which either as to its factual existence or as to its amount is dependent upon an inventory computation or a profit and loss computation,

(d) under Insuring Agreements B and C to loss due to any fraudulent, dishonest or criminal act by an Employee, director, trustee or authorised representative of any Assured, while working or otherwise and whether acting alone or in collusion with other provided this Exclusion does not apply to Safe Burglary or Robbery or attempts thereat,

(e) under Insuring Agreements B and C to Loss (1) due to the giving or surrendering of Money or Securities in any exchange or purchase (2) due to accounting or arithmetical errors or omissions or (3) of manuscripts, books of account or records,

(f) under Insuring Agreement B, to loss of Money contained in coin operated amusement devices or vending machines, unless the amount of Money deposited within the device or machine is recorded by a continuous recording instrument therein,

(g) under Insuring Agreement C, to loss of insured property while in the custody of any armored motor vehicle company, unless such loss is in excess of the amount recovered or received by the Assured under (1) the Assured's contract with said armored motor vehicle company (2) insurance carried by said armored motor vehicle company for the benefit of users of its service and (3) all other insurance and indemnity in force in whatsoever form carried by or for the benefit of users of said armored motor vehicle company's service and then this Section shall cover only such excess,

(h) under Insuring Agreement B, to loss other than to Money, Securities a safe or vault by fire whether or not such fire is caused by contributed to by or arises out of the occurrence of a hazard,

(i) to loss due to the surrender of Money, Securities or other property away from the Premises as a result of a threat to do

   (1) bodily harm to any person or

   (2) damage to the Premises or Property owned by the Assured or held by the Assured in any capacity provided however these exclusions do not apply.

      (a) to Insuring Agreement A if coverage is afforded thereunder or

      (b) under Insuring Agreement C if coverage is afforded thereunder to loss of Money, Securities or other property while being conveyed by a Messenger when there was no knowledge by the assured of any such threat at the time the conveyance was initiated,



FUORDNM/11/32/SS CW/31.07.91

NORO0981

33

(j) to the defense of any legal proceeding brought against the Assured, or to fees, costs or expenses incurred or paid by the Assured in prosecuting or defending any legal proceeding whether or not such proceeding results or would result in a loss to the Assured covered by the Section except as may be specifically stated to the contrary in this Section,

(k) to potential income, including but not limited to interest and dividends, not realized by the Assured because of a loss covered under this Section,

(l) to damages of any type for which the Assured is legally liable, except direct compensatory damages arising from a loss covered under this Section,

(m) to costs, fees and other expenses incurred by the Assured in establishing the existence of or amount of loss covered under this Section.

3.  **Definitions**

The following terms, as used in this Section shall have the respective meanings stated in this Section:

"Money" means currency, coins, bank notes and bullion and travellers checks, register checks and money orders held for sale to the public.

"Securities" means all negotiable and non-negotiable instruments or contracts representing either money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include Money.

"Employee" means any natural person (except a director or trustee of the Assured, if a corporation who is not also an officer or employee thereof in some other capacity) while in the regular service of the Assured in the ordinary course of the Assured's business during the Policy Period and whom and Assured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character.

As applied to loss under Insuring Agreement A the above words "while in the regular service of the Assured" shall include the first 30 days thereafter subject however to Section 12.

"Premises" means the interior of that portion of any building which is occupied by the Assured in conducting its business.

"Banking Premises" means the interior of that portion of any building which is occupied by a banking institution in conducting its business.

"Messenger" means the Assured or a partner of the Assured or any Employee who is duly authorized by the Assured to have the care and custody of the insured property outside the Premises.

NOR00982

- 34 -

"Custodian" means the Assured or a partner of the Assured or any Employee who is duly authorized by the Assured to have the care and custody of the insured property within the Premises excluding any person while acting as a watchman, porter or janitor.

"Robbery" means the taking of insured property (1) by violence inflicted upon a Messenger or a Custodian (2) by putting him in fear of violence (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by a partner or Employee of the Assured, (4) from the person or direct care and custody of a Messenger or Custodian who has been killed or rendered unconscious or (5) under Insuring Agreement B (a) from within the Premises by means of compelling a Messenger or Custodian by violence or threat of violence while outside the Premises to admit a person into the Premises or to furnish him with means of ingress into the Premises, or (b) from a showcase or show window within the Premises while regularly open for business by a person who has broken the glass thereof from outside the Premises.

"Safe Burglary" means (1) the felonious abstraction of insured property from within a vault or safe, the door of which is equipped with a combination lock, located within the Premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a), all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made if not made through such doors or (2) the felonious abstraction of such safe from within the Premises.

"Loss" except under Insuring Agreements A and E includes damage.

4.  **Loss Caused By Unidentifiable Employees**

If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Assured shall be unable to designate the specific Employee or Employees causing such loss, the Assured shall nevertheless have the benefit of Insuring Agreement A subject to the provisions of Section 2 (b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees and provided further that the aggregate liability of Underwriters for any such loss shall not exceed the Limit of Liability applicable to Insuring Agreement A.

FVORDBK/11/34/SS CV/31.07.91

- 35 -

5.   **Ownership of Property, Interest Covered**

The insured property may be owned by the Assured or held by the Assured in any capacity whether or not the Assured is liable for the loss thereof, or may be property as respects which the Assured is legally liable provided Insuring Agreements B, C and D apply only to the interest of the Assured in such property including the Assureds liability to others and do not apply to the interest of any other person or organization in any of said property unless included in the Assured's proof of loss in which event the third paragraph of Section 8 is applicable to them.

6.   **Books and Records**

The Assured shall keep records of all the insured property in such manner that Underwriters can accurately determine therefrom the amount of loss.

7.   **Prior Fraud, Dishonesty or Cancellation**

The coverage of Insuring Agreement A shall not apply to any Employee from and after the time that the Assured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Assured or otherwise, whether such act be committed before or after the date of employment by the Assured.

If, prior to the issuance of this Policy, any fidelity insurance in favor of the Assured or any predecessor in interest of the Assured and covering one or more of the Assured's Employees shall have been cancelled as to any of such employees by reason of the giving of written notice of cancellation by the Insurer issuing such fidelity insurance and if such Employees shall not have been reinstated under the coverage of said fidelity insurance or superseding fidelity insurance, Underwriters shall not be liable on account of such Employees unless Underwriters shall agree in writing to include such Employees within the coverage of Insuring Agreement A.

8.   **Valuation-Payment-Replacement**

In no event shall Underwriters be liable as respect Securities for more than the actual cash value thereof at the close of business on the business day next preceding the day on which the loss was discovered nor as respects other property for more than actual cash value thereof at the time of loss provided however the actual cash value of such other property held by the Assured as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by the Assured when making the advance or loan, nor in the absence of such record the unpaid portion of the advance or loan plus accrued interest thereon at legal rates.

Underwriters may with the consent of the Assured settle any claim for loss of property with the owner thereof. Any property for which Underwriters have made indemnification shall become the property of Underwriters.

FWORM04/11/35/35 CV/31.07.91

NOR00984

- 36 -

In case of damage to the Premises or loss of property other than
Securities Underwriters shall not be liable for more than the actual cash
value of such property or for more than the actual cost of repairing such
Premises or property or of replacing same with property or material of
like quality and value. Underwriters may at their election pay such
actual cash value or make such repairs or replacement if Underwriters and
the Assured cannot agree upon such cash value or such cost of repairs or
replacements such cash value or such cost shall be determined by
arbitration.

9.   Recoveries

If the Assured shall sustain any loss covered by this Section which
exceeds the applicable amount of insurance hereunder the Assured shall be
entitled to all recoveries except from suretyship insurance, reinsurance,
security or indemnity taken by or for the benefit of Underwriters by
whomsoever made on account of such loss under the Section until fully
reimbursed, less the actual cost of effecting the same and any remainder
shall be applied to the reimbursement of Underwriters.

10.   Limit of Liability

Payment of loss under Insuring Agreement A or E shall not reduce
Underwriters liability for other losses under the applicable Insuring
Agreement whenever sustained. Underwriters total liability (a) under
Insuring Agreement A for all loss caused by any Employee or in which such
Employee is concerned or implicated or (b) under Insuring Agreement E for
all loss by forgery or alteration committed by any person or in which such
person is concerned or implicated, whether such forgery or alteration
involves one or more instruments, is limited to the applicable amount of
insurance specified in the Table of Limits of Liability or endorsement
amendatory thereto. The liability of Underwriters for loss sustained by
any or all of the Assured shall not exceed the amount for which
Underwriters would be liable had all such loss been sustained by any one
of the Assured.

Except under Insuring Agreement A and E the applicable limit of liability
stated in the Table of Limits of Liability is the total limit of
Underwriters liability with respect to all loss of property of one or more
persons or organizations arising out of any one occurrence. All loss
incidental to an actual or attempted fraudulent, dishonest or criminal act
or series of related acts at the Premises, whether committed by one or
more persons shall be deemed one loss.

Regardless of the number of years this Policy shall continue in force and
the number of premiums which shall be payable or paid, the limit of
Underwriters liability as specified in the Table of Limits of Liability
shall not be cumulative from year to year or period to period.

FMORDNU/11/36/SS  CW/31.07.91

NOR00985

- 37 -

### 11. Limit of Liability Under this Section and Prior Insurance

This Section shall apply only to Insuring Agreement A and E

With respect to loss caused by any person (whether one of the Employees or not) or in which such person is concerned or implicated or which is chargeable to any Employee as provided in Section A and which occurs partly during the Policy Period and partly during the period of the bonds or policies issued by Underwriters to the Assured or to any predecessor in interest of the Assured and terminated or cancelled or allowed to expire and in which the period for discovery has not expired at the time any such loss thereunder is discovered the total liability of Underwriters under this Section and under such other bonds or policies shall not exceed , in the aggregate, the amount carried under the applicable Insuring Agreement of this Section on such loss or the amount available to the Assured under such other bonds or policies as limited by the terms and conditions thereof, for any such loss if the latter amount be the larger.

### 12. Cancellation as to any Employee

Insuring Agreement A shall be deemed cancelled as to any Employee (a) immediately upon discovery by the Assured or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee or (b) at 12.01 a.m. Standard Time as aforesaid upon the effective date specified in a written notice mailed to the Assured. Such date shall be not less than fifteen days after the date of mailing. The mailing by Underwriters of notice as aforesaid to the Assured at the address shown in this Policy shall be sufficient proof of notice. Delivery of such written notice by Underwriters shall be equivalent to mailing.

### 13. No Benefit to Bailee

This Condition shall apply only to Insuring Agreements B and C

The Insurance afforded by Insuring Agreements B and C shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

- 38 -

## GENERAL CONDITIONS

1. **SALVAGE AND RECOVERY CLAUSE:**

   All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

2. **INSPECTIONS, AUDIT AND VERIFICATION OF VALUES:**

   Underwriters or their duly authorised representative shall be permitted at all reasonable times to inspect the premises used by the Assured and to examine the Assured's books or records so far as they relate to coverage afforded by this Insurance.

3. **RECORDS:**

   It is hereby understood and agreed that the records and books as kept by the Assured shall be acceptable to Underwriters in determining the amount of loss or damage covered hereunder.

4. **CANCELLATION:**

   This Insurance is only cancellable at an anniversary date. Either of the parties may cancel by giving written notice to the other party, provided said notice is issued at least 60 days prior to the said anniversary.

   In the event of non payment of premium 10 days written notice of cancellation will be given and the loss fund will be deemed fully earned, not subject to any reduction.

   If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

5. **CURRENCY:**

   The premium and losses under this Insurance are payable in United States Currency.

6. **BANKRUPTCY AND INSOLVENCY:**

   In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, Underwriters shall not be relieved of the payment of any claim to the Assured or to its liquidator, receiver or statutory successor of the Assured under this policy without diminution because of the insolvency of the Assured.

RHMOA/759/7/GS GY/28.11.91

NOR00987

- 39 -

7.  OTHER INSURANCE:

If the Assured has other Insurance against loss covered by this Insurance
Underwriters shall be liable, under the terms of this Insurance, only as
excess of valid and collectible coverage provided by such other Insurance,
and no monies payable or collectible from such other Insurance shall
accrue in the aggregate loss fund of this Insurance.

8.  MORTGAGE CLAUSE:

The interest of any creditor, lien holder or mortgagor on property covered
hereunder is included as if a separate endorsement were attached hereto to
the extent of the amount of mortgage as of the date of loss subject to the
limits of liability set forth in this Insurance.

9.  CLAIMS:

The Assured shall immediately notify Underwriters through Willis Corroon
Administrative Services Corp., 312 South 4th Street, Suite 209,
Springfield, Il. 62701 of any occurrence, the cost of which is likely to
result in payment by Underwriters under this Insurance, or whenever the
Assured has information from which the Assured may reasonably conclude
that an occurrence covered under Section II or Section III or Section IV
of this Insurance involves injury or damage.  Underwriters shall have the
opportunity to be associated with the Assured in defence of any claims,
suits or proceedings relative to an occurrence where, in the opinion of
Underwriters, their liability under this Insurance is likely to be
involved, in which case the Assured and Underwriters shall cooperate to
the mutual advantage of both.

10.  LOSS PAYMENTS:

When it has been determined that Underwriters are liable under this
Insurance, Underwriters shall thereafter promptly reimburse the Assured
for all payments made in excess of the Self Insurance Retention stated in
Part A (Specific Excess Agreement).  All adjusted claims shall be paid or
made good to the Assured within a reasonable time after the presentation
to Willis Corroon Administrative Services Corp., and acceptance by
Underwriters of satisfactory proof of interest and loss.

11.  APPEAL:

In the event that the Assured and Underwriters are unable to agree to the
advisability of appealing a judgement, a disinterested attorney, mutually
agreeable to Underwriters and the Assured, shall be retained and directed
to render a written opinion as to his recommendation concerning such
appeal.  Such written recommendation shall be binding on both the Assured
and Underwriters.
Fees of such retained attorney shall be borne equally by both parties for
the services of rendering his recommendation only.  The Assured's portion
of such fee shall not accrue in the aggregate loss fund.

NOR00988

40

12.  LITIGATION PROCEEDINGS:

No suit to recover on account of loss under this Insurance shall be
brought until ninety days after the proof of loss shall have been
furnished.

13.  SUBROGATION:

Underwriters shall be subrogated to all rights which the Assured has
against any person or other entity in respect to any claim or payment made
under this Insurance, and the Assured shall execute all papers required by
Underwriters and shall cooperate with Underwriters to secure Underwriters
rights.  In case any reimbursement is obtained or recovery made by the
Assured or Underwriters on account of any loss covered by this Insurance,
the net amount of such reimbursement or recovery, after deducting the
actual cost of obtaining or making the same, shall be first applied in the
following order:

  (a)  To reduce the amount of loss which exceeds the applicable limit of
       liability.

  (b)  To reduce Underwriters loss until Underwriters are fully reimbursed.

  (c)  To reduce the Assured's loss because of the application of the Self
       Insured Retention.

14.  WAIVER OF SUBROGATION:

This Insurance shall not be invalidated if the Assured by written
agreement has waived or shall waive its right of recovery from any party
for loss or damage covered hereunder; provided that any such waiver is
made prior to the occurrence of said loss or damage.

15.  ASSIGNMENT:

Assignment of interest under this Insurance shall not bind Underwriters
until Underwriters consent is endorsed hereon.

16.  CHANGES:

By acceptance of this Insurance the Assured agrees that it embodies all
agreements existing between the Assured and Underwriters or any of its
agents relating to this Insurance.  None of the provisions, conditions or
other terms of this Insurance shall be waived or altered except by
endorsement; nor shall notice to any agent or knowledge possessed by any
agent or by any other person be held to effect a waiver or change in any
part of this Insurance.

17.  FRAUDULENT CLAIMS:

If the Assured shall make any claim knowing the same to be false or
fraudulent, as regards amount or otherwise, this Insurance shall become
void and all claims hereunder shall be forfeited.

FVORDNM/11/40/SS CV/31.07.91

NOR00989

-41-

## GENERAL EXCLUSIONS

1.  **WAR CLAUSE:**

Coverage does not apply under this Insurance for loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, any weapon of war employing atomic fission or radioactive force whether in time of peace or war, hostilities (whether war be declared or not); civil war, rebellion, revolution, insurrection, military or usurped power, confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority unless such acts of destruction by order of civil authority are at the time of and for the purpose of preventing spread of fire; or claims or liability arising directly or indirectly from nuclear fission, nuclear fusion or radioactive contamination.

2.  **i)  NUCLEAR INCIDENT EXCLUSION:**

**PROPERTY**

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused.  NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

**CASUALTY**

This policy does not apply:

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction.

(a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

NOR00990

-42-

II. Under any Medical Payments Coverage or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor, "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

FVURDNM/11/42/SS CV/31.07.91

NOR00991

43

(d) any structure, basin, excavation, premises or place
prepared or used for the storage or disposal of waste, and
includes the site on which any of the foregoing is located,
all operations conducted on such site and all premises
used for such operations. "nuclear reactor" means any
apparatus designed or used to sustain nuclear fission in a
self-supporting chain reaction or to contain a critical
mass of fissionable material. With respect to injury to or
destruction of property, the word "injury" or "destruction"
includes all forms of radioactive contamination of property.

2) POLLUTION HAZARD

It is agreed that Underwriters shall have no obligation under this
insurance:

(1) to investigate, settle or defend any claim or suit against any
assured alleging actual or threatened injury or damage of any nature
or kind to persons or property which arises out of or would not have
occurred but for the pollution hazard; or

(2) to pay any damages, judgements, settlements, loss, costs or expenses
that may be awarded or incurred by reason of any such claim or suit
or any such injury or damage, or in complying with any action
authorized by law and relating to such injury or damage.

As used in this endorsement, "pollution hazard" means an actual exposure
or threat of exposure to the corrosive, toxic or other harmful properties
of any solid, liquid, gaseous or thermal pollutants, contaminants,
irritants or toxic substances, including smoke, vapors, soot, fumes, acids
or alkalis, and waste materials consisting of or containing any of the
foregoing.



FUORDNH/11/43/SS CW/31.07.91



# Lloyd's Policy

**We, Underwriting Members** of the syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his heirs, Executors and Administrators) shall be liable only for his own share of his syndicate's proportion of any such loss and of any such expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE
*General Manager*

J(A)   NMA 2421 (26/3/91) Form approved by Lloyd's Underwriters' Non-Marine Association Limited
Set and Printed by CSC City Print Limited 031-355 1928

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

NOR00993

COPY

ENDORSEMENT attaching to and forming part of Policy No. 6512157

in the Name of CITY OF WAUKEGAN, IL

Effective date of this endorsement is 1st November 1993. Endorsement No. 1

---

### ENDORSEMENT

It is hereby understood and agreed the following will apply:

1. The Policy Number is amended to read G512157.

2. The Premium for the period 1st November 1993 to 1st November 1994 will be $182,500.

3. The security hereon shall be 30% Lloyds Underwriters and Underwriters Lines hereon totalling 30% are percentages of 100% of the total limits and premium specified herein. It is also understood and agreed that as and from the above effective date Underwriters subscribing to this policy are as signed hereon and not as previously signed.

ALL OTHER TERMS, CONDITIONS AND EXCEPTIONS REMAIN UNALTERED.





NOR00994

Now Know Ye that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned 'List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors Administrators or to Indemnify him or them against all such loss, damage or liability as herein provided, such payment to be made after such loss, damage or liability is proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Share therein, is deemed to be incorporated into and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us.

(NM)

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sums insured hereunder shared between the Members of those Syndicates.

LLOYD'S POLICY SIGNING OFFICE.

General Manager.

### TABLE APPLICABLE Schedule A ONLY

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | |
|---|---|---|---|
| FOR LPSO USE ONLY | | LPSO No. & DATE 0576 61025 22 02 194 | |
| | 113 | | |
| | FIGURE | | PAGE 1 |
| PERCENT | | | |
| 5.43 | 529 | L15A01546000 | |
| 2.89 | 15 | 122202134070 | |
| 2.89 | 947 | Q9532E92A24X | |
| 2.89 | 546 | TB200L93I951 | |
| 1.45 | 205 | 400N013252NA | |
| 3.61 | 1051 | LAZM00344G7 | |
| 1.81 | 322 | 93X52146 | |
| 1.81 | 204 | 069816890901 | |
| 2.17 | 1141 | 06123092A | |
| 1.08 | 382 | B1199A000337 | |
| 1.08 | 1096 | 041998938 | |
| 1.08 | 227 | 01640ADAAH2X | |
| 0.54 | 79 | 204DA3F5147A | |
| 1.27 | 991 | 0024093AA000 | |

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | |
|---|---|---|---|
| FOR LPSO USE ONLY | | LPSO No. & DATE 0576 61025 22 02 194 | |
| | 114 | | |
| | FIGURE | | PAGE 2 |
| PERCENT | | | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1994/102

| TOTAL LINE | No. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 30.00 | 14 | ILA1   7715 |

### TABLE APPLICABLE Schedule B ONLY

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | |
|---|---|---|---|
| FOR LPSO USE ONLY | | LPSO No. & DATE 0576 61031 22 02 194 | |
| | 121 | | |
| | FIGURE | | PAGE 1 |
| PERCENT | | | |
| 5.43 | 529 | L21A0155000 | |
| 2.89 | 15 | 17920507007Q | |
| 2.89 | 947 | Q9547L92A58X | |
| 2.89 | 546 | ABBN0206BNNA | |
| 1.45 | 205 | LAZM0034507 | |
| 3.61 | 1051 | | |
| 1.81 | 322 | 93X55073 | |
| 1.81 | 204 | 069816850902 | |
| 2.17 | 1141 | 06124L92A | |
| 1.08 | 382 | N1399V000423 | |
| 1.08 | 1096 | 04200893B | |
| 1.08 | 227 | 01640ADBB2X | |
| 0.54 | 79 | 204DA4JS820A | |
| 1.27 | 991 | 0052493AA000 | |

| AMOUNT, PERCENTAGE OR PROPORTION | | UNDERWRITER'S REFERENCE | |
|---|---|---|---|
| FOR LPSO USE ONLY | | LPSO No. & DATE 0576 61031 22 02 194 | |
| | 122 | | |
| | FIGURE | | PAGE 2 |
| PERCENT | | | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1994/102

| TOTAL LINE | No. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 30.00 | 14 | ILA1   7715 |

L.P.S.O. M.X.L.

NOR00995

LLOYD'S POLICY SIGNING OFFICE EMBOSSMENT APPEARS HERE ON ORIGINAL DOCUMENT

ENDORSEMENT attaching to and forming part of Policy No. 101104700

in the Name of CITY OF WAUKEGAN, IL

Effective date of this endorsement is 1st November 1992. Endorsement No. 10
-----------------------------------------------------------------------

### ENDORSEMENT

It is hereby noted and agreed that  the following shall apply:-

1. The policy number is amended to read G512157.

2. The premium for the period 1st November 1992 to 1st November 1993
   shall be $170,000 (100%).

3. The security hereon shall be 70% Lloyd's Underwriters and
   Underwriters Lines hereon totalling 70% are percentages of 100% of
   the total limits and premium specified herein. It is also understood
   and agreed that as and from the above effective date Underwriters
   subscribing to this policy are as signed hereon and not as previously
   signed.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED



Now Know Ye that We the Underwriters, Members of the Syndicates whose definitive numbers in the attached List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or cause to be paid to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, such payment to be made after such loss, damage or liability is proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER, THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us.

(NM)

LLOYD'S POLICY SIGNING OFFICE

*General Manager*

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured hereunder shared between the Members of these Syndicates. |
|---|

## TABLE APPLICABLE   PD ONLY

| FOR LPSO USE ONLY | | LPSO No & DATE 0576 62195 25|02|93 |
|---|---|---|
| 231 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITERS REFERENCE | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 30.00 | 210 | 05404081C901 | |
| 12.97 | 122 | CC246D92ARRR | |
| 5.41 | 529 | L15A01390000 | |
| 2.88 | 15 | 02220213406O | |
| 3.61 | 212 | 052358568001 | |
| 2.34 | 947 | Q9532E91A24X | |
| 3.61 | 546 | TB200L92A951 | |
| 1.44 | 205 | 400N01326ZLA | |
| 1.44 | 1051 | LAZMO0S4406 | |
| 1.44 | 322 | 92X52146 | |
| 0.54 | 79 | 126NB2F5147A | |
| 0.72 | 1034 | C19992V000019 | |
| 0.72 | 1113 | F7X500169041 | |
| 0.72 | 362 | B1192N000337 | |
| 0.72 | 225 | 00204892 | |

| FOR LPSO USE ONLY | | LPSO No. & DATE 0576 62195 25|02|93 |
|---|---|---|
| 232 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITERS REFERENCE | PAGE 2 |
|---|---|---|---|
| PERCENT | | | |
| 0.72 | 227 | 016A0ACAAH2X | |
| 0.72 | 991 | 0024092AA000 | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1993/102

| TOTAL LINE | % of SYND | FOR LPSO USE ONLY | |
|---|---|---|---|
| 70.00 | 17 | ILA1 | 8190 |

## TABLE APPLICABLE   UA ONLY

| FOR LPSO USE ONLY | | LPSO No & DATE 0576 62198 25|02|93 |
|---|---|---|---|
| 243 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITERS REFERENCE | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 30.00 | 210 | 05404081C902 | |
| 12.97 | 122 | CC247L92BRRR | |
| 5.41 | 529 | L21A01392000 | |
| 2.88 | 15 | 079205070080 | |
| 3.61 | 212 | 052358568001 | |
| 2.34 | 947 | Q9547L91A58X | |
| 3.61 | 548 | TB200L92C957 | |
| 1.44 | 205 | 488N0205BNLA | |
| 1.44 | 1051 | LAZMO034508 | |
| 1.44 | 322 | 92X55073 | |
| 0.54 | 79 | 126NB8J5820A | |
| 0.72 | 1034 | C199X2K00020 | |
| 0.72 | 1113 | LTX500164041 | |
| 0.72 | 362 | N1392G000423 | |
| 0.72 | 225 | 00204792 | |

| FOR LPSO USE ONLY | | LPSO No & DATE 0576 62198 25|02|93 |
|---|---|---|
| 244 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITERS REFERENCE | PAGE 2 |
|---|---|---|---|
| PERCENT | | | |
| 0.72 | 227 | 016A0AGBBR2X | |
| 0.72 | 991 | 0052492AA000 | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1993/102

| TOTAL USE | % of SYND | FOR LPSO USE ONLY | |
|---|---|---|---|
| 70.00 | 17 | ILA1 | 8190 |

LLOYD'S POLICY SIGNING OFFICE EMBOSSMENT APPEARS HERE ON ORIGINAL DOCUMENT

NOR00997

PRMHA / 60 / 1 / JAR TS / / 93 92

## Schedule

Policy or Certificate No.          552  / 101104700          Contract No. (if any)

The name and address of the Assured

CITY OF WAUKEGAN AND ALL BOARDS, DEPARTMENTS,
DIVISIONS, COMMISSIONS, AUTHORITIES AND ANY
OTHER ACTIVITIES UNDER THE SUPERVISION OR
CONTROL OF THE CITY WHETHER NOW OR HEREAFTER
CONSTITUTED.

The risk, interest, location and sum insured hereunder



### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due
hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction
of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should
understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent
jsidiction in the United States, to remove an action to a United States District Court, or to seek a transfer
a case to another Court as permitted by the laws of the United States or of any State in the United States.
is further agreed that service of process in such suit may be made upon

THOMAS L. STEVENS, 115 SOUTH LA SALLE STREET, CHICAGO, ILLINOIS, 60603          , and
that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final
decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any
such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured
(or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit
shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision
therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance
or other officer specified for that purpose in the statute, or his successor or successors in office, as their
true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding
instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract
of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer
is authorized to mail such process or a true copy thereof.

NMA 1998 (24/4/86) Form approved by Lloyd's Underwriters' Non-Marine Association Printed by The Corless Berry Co Ltd

The period of Insurance from   1st November, 1991    to    1st November, 1994
both days inclusive and for such further period or periods as may be mutually agreed upon .
                        both days at 12.01 a.m. Local Standard Time
Dated in   LONDON                the          22nd May, 1992.

J or J(A)  (Schedule) NMA 2422 for attachment to NMA 2420, NMA 2421, NMA 2461 or NMA 2/          NOR00998

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

. in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 3.9

---

## ENDORSEMENT

It is hereby understood and agreed that Specific Condition 3, "Extended
Reporting Period", of Section IV is deleted in its Entirety and Replaced by
the following:-

3.   EXTENDED REPORTING PERIOD: In the event of cancellation or non-renewal of
     this Policy or of this section of the policy the Assured shall have the
     option of:

     a)  upon payment of an additional premium of $12,500 purchasing an
         "Extended Reporting Period" extending such insurance as is afforded
         by this Section in respect of Claims First made within a maximum
         period of 24 months following immediately upon the effective date of
         such cancellation or non-renewal, or

     b) . if the Assured does not purchase the "Extended Reporting Period".
         underwriters shall extend such insurance as is afforded by this
         Section to apply to Claims First Made against the Assured during the
         30 days following immediately upon the effective date of such
         cancellation or non-renewal but only by reason of a claim for
         injuries or damages which commences and was sustained subsequent to
         the Retroactive Date set out in Declaration 4 and prior to the
         effective date of such cancellation or non-renewal, and which is
         otherwise covered by this policy.  The "Extended Reporting Period"
         for claims made subsequent to termination of the policy period, if
         purchased, must be endorsed hereto.

     If however, this policy is immediately succeeded by similar claims made
     insurance coverage, with any insurer, on which the Retroactive Date is
     the same as or earlier than that shown in Declaration 4, the succeeding
     policy shall be deemed to be a renewal of this policy, and the Assured
     shall have no right to secure an "Extended Reporting Period" from
     underwriters.

         The Assured's right to purchase the "Extended Reporting Period" must
         be exercised by notice in writing to underwriters not later than
         thirty (30) days after the cancellation or termination date of this
         policy, and must include tender of the entire premium for the
         "Extended Reporting Period".  If such notice and tender is not so
         given the Assured shall not at a later date be able to exercise the
         right to purchase the "Extended Reporting Period".

RHH04/759/25/GS/HB CW/28.11.91                                    NOR00999

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 8

---

### DATA PROCESSING MEDIA

1.  **PROPERTY INSURED:** Active data processing media, being property of the Assured or property of others for which the Assured may be liable.

2.  **PROPERTY EXCLUDED:** This Policy does not insure accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts or other documents except as they may be converted to data processing media form, and then only in that form, or any data processing media which cannot be replaced with other of like kind and quality.

3.  **PERILS INSURED:** This Insuring Agreement insures against all risks of direct physical loss or damage to the property covered, except as hereinafter provided.

4.  **PERILS EXCLUDED:** This Insuring Agreement does not insure against loss, damage, or expense resulting from or caused directly or indirectly by:

    A.  Data processing media failure or breakdown or malfunction of the data processing system including equipment and component parts while said media is being run through the system, unless fire or explosion ensues and then only for the loss, damage or expense caused by such ensuing fire or explosion.

    B.  Electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning, or as a result of Power failure originating at the Assured's premises or within 100 feet from the Buildings containing the covered Property.

    C.  Dryness or dampness of atmosphere, extremes of temperature, corrosion, rust unless directly resulting from physical damage to the data processing system's air conditioning facilities caused by a peril not excluded by the provisions of this Insuring Agreement;

    D.  Delay or loss of market;

    E.  Inherent vice, wear, tear, gradual deterioration or depreciation;

    F.  Any dishonest, fraudulent or criminal act by an Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

    G.  Design error or faulty materials and programming errors.

    H.  Damage during service or repair.

    I.  Loss of or damage to property rented or leased to others while away from the premises of the Assured.



RMH04/759/23/GS CW/28.11.91

**NOR01000**

J.   War risk or nuclear risks as excluded in the Policy to which this
     Insuring Agreement is attached.

5.   VALUATION:  The Underwriters shall not be liable beyond the actual
     reproduction cost of the property; if not replaced or reproduced, blank
     value of media; all subject to the applicable limit of liability stated in
     the Policy.

6.   DEFINITIONS:  The term "active data processing media" wherever used in
     this policy shall mean all forms of converted data and/or programme and/or
     instruction vehicles employed in the Assured's data processing operation,
     except all such UNUSED property.

     Subject otherwise to all terms, clauses and conditions as heretofore.





RMNOA/759/24/GS CW/28.11.91

NOR01001

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 7

---

### DATA PROCESSING SYSTEM EQUIPMENT

1. **PROPERTY COVERED:** Data processing system including equipment and component parts thereof owned by the Assured or leased, rented or under the control of the Assured.

2. **PROPERTY EXCLUDED:**

   A. Active data processing media which is hereby defined as meaning all forms of converted data and/or programme and/or instruction vehicles employed in the Assureds data processing operation;

   B. Accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts, or other documents;

   C. Property rented or leased to others while away from the premises of the Assured.

3. **PERILS INSURED:** Insures against all risks of direct physical loss or damage to the property covered, except as hereinafter provided.

4. **PERILS EXCLUDED:** This Insuring Agreement does not insure against loss, damage or expense caused directly or indirectly by:

   A. Damage due to faulty construction or materials, error in design unless fire or explosion ensues, and then only for loss, damage, or expense caused by such ensuing fire or explosion;

   B. Inherent vice, wear, tear, gradual deterioration or depreciation;

   C. Any dishonest, fraudulent or criminal act by an Assured, a partner therein or an officer, director or trustee thereof, whether acting alone or in collusion with others;

   D. Dryness or dampness of atmosphere, extremes of temperature, corrosion, rust unless directly resulting from physical damage to the data processing system's air conditioning facilities caused by a peril not excluded by the provisions of this Insuring Agreement;



E. Actual work upon the property covered, unless fire or explosion ensues, and then only for loss, damage, or expense caused by such ensuing fire or explosion;

F. Delay or loss of market

G. War risk or nuclear risks as excluded in the Policy to which this Insuring Agreement is attached.

5. VALUATION: Replacement Cost - The Underwriters shall not be liable beyond the actual retail replacement cost of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated on the basis of the actual cash retail replacement cost of property similar in kind to that insured at the place of and immediately preceding the time of such loss or damage, but in no event to exceed the limit of liability stipulated in the Policy.

6. DIFFERENCE IN CONDITIONS: It is a condition of this Insurance that the Assured shall file with Underwriters representative a copy of any lease or rental agreement pertaining to the property insured hereunder insofar as concerns the lessors' liability for loss or damage to said property, and coverage afforded hereunder shall be only for the difference in conditions between those contained in said lease or rental agreement and the terms of this Insuring Agreement. The assured agrees to give the Underwriters thirty days notice of any alteration, cancellation or termination of the above mentioned lease or rental agreement pertaining to the lessors' liability.



Subject otherwise to all terms, clauses and conditions as heretofore.



RHH04/759/22/GS CW/28.11.91                                                   **NOR01003**

ENDORSEMENT attaching to and forming part of Section I of Policy No. 101104700

in the Name of City of Waukegan, Illinois

Effective date of this endorsement is 1st November 1991. Endorsement No. 6

---

### ACCOUNTS RECEIVABLE EXTENSION.

### INSURING CLAUSE

In consideration of the premium paid and subject to the terms, conditions and
exclusions of the policy to which this Extension is attached, and to the
following terms, conditions and exclusions, this insurance is extended to cover:

1. **SUBJECT TO INSURANCE**

   A. All sums due to the Assured from customers', provided the Assured is
   unable to effect collection thereof as the direct result of loss of
   or damage to records of accounts receivable;

   B. Interest charges on any loan to offset impaired collection spending
   repayment of such sums made uncollectible by such loss or damage;

   C. Collection expense in excess of normal collection cost and made
   necessary because of such loss or damage;

   D. Other expenses, when reasonably incurred by the Assured in
   re-establishing records of accounts receivable following such loss or
   damage.

2. **PERILS INSURED**

   All Risks of Direct Physical Loss or Damage to the Assured's records of
   accounts receivable occurring during the period of the policy to which
   this extension is attached.

### PERILS EXCLUDED

This Extension does not insure against:-

1. loss due to bookkeeping, accounting or billing errors or omissions;

2. loss, the proof of which as to factual existence is dependent upon an
   audit of records or an inventory computation; but this shall not preclude
   the use of such procedures in support of claim for loss which the Assured
   can prove, through evidence wholly apart therefrom, is due solely to a
   risk of loss to records of accounts receivable not otherwise excluded
   hereunder;



RMM04/759/18/GS CW/28.11.91

**NOR01004**

3.  loss due to alteration, falsification, manipulation, concealment,
    destruction or disposal of records of accounts receivable committed to
    conceal the wrongful giving, taking, obtaining or withholding of money,
    securities or other property but only to the extent of such wrongful
    giving, taking, obtaining or withholding;

4.  loss due to electrical or magnetic injury, disturbance or erasure of
    electronic recordings; except by lightening.

## SUM INSURED

The Underwriters hereon shall not be liable under this Extension for more than
the respective sum insured stated in the Policy in respect of each loss or
series of losses arising out of one event.

## CONDITIONS

1.  RECOVERIES

    After payment of loss, all amounts recovered by the Assured on accounts
    receivable for which the Assured has been indemnified shall belong and be
    paid to the Underwriters by the Assured up to the total amount of loss
    paid by the Underwriters; but all recoveries in excess of such amounts
    shall belong to the Assured.

2.  ASSURED'S DUTIES UPON OCCURRENCE OF LOSS

    Upon the occurrence of any loss which may result in a claim hereunder, the
    Assured shall:

    A.  give notice thereof as soon as practicable to the Underwriters or any
        of their authorised agents and, if the loss is due to a violation of
        law, also to the police;

    B.  file detailed proof of loss, duly sworn to, with the Underwriters
        promptly on expiration of ninety days from the date on which the
        record of accounts receivable were lost or damaged.

Upon the Underwriters request, the Assured shall submit to examination by the
Underwriters, subscribe the same, under oath if required, and produce for the
Underwriters examination all pertinent records, all at such reasonable times
and places as the Underwriters shall designate, and shall cooperate with the
Underwriters in all matters pertaining to loss or claims with respect thereto,
including rendering of all possible assistance to effect collection of
outstanding accounts receivable.



RHH04/759/19/GS CW/28.11.91

NOR01005

3.  **DETERMINATION OF RECEIVABLES: DEDUCTIONS**

When there is proof that a loss covered by this policy has occurred but Assured cannot accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be based on the Assured's monthly statements and shall be computed as follows:-

A.  determine the amount of all outstanding accounts receivable at the end of the same fiscal month in the year immediately preceding the year in which the loss occurs;

B.  Calculate the percentage of increase or decrease in the average monthly total of accounts receivable for the twelve months immediately preceding the month in which the loss occurs, or such part thereof for which the Assured has furnished monthly statements to the Underwriters as compared with such average for the same months of the preceding year;

C.  the amount determined under (A) above, increased by the percentage calculated under (B) above, shall be the agreed total amount of accounts receivable as of the last day of the fiscal month in which said loss occurs;

D.  the amount determined under (C) above shall be increased or decreased in conformity with the normal fluctuations in the amounts of accounts receivable during the fiscal month involved, due consideration being given to the experience of the business since the last day of the last fiscal month for which statement has been rendered.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Assured, and an amount to allow for probable bad debts which would normally have been uncollectible by the assured.  All unearned interest and service charges shall be deducted.



RMHO4/759/20/GS CW/28.11.91