IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHFIELD INSURANCE COMPANY and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 09 C 7402 |
| v. | ) | |
| CITY OF WAUKEGAN et al., | ) ) | JUDGE DAVID H. COAR |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Northfield Insurance Company and St. Paul Fire and Marine Insurance Company seek a declaratory judgment that they need not defend or indemnify the City of Waukegan, or police officers Michael Urbancic, William Biang, Phil Stevenson, Miguel Juarez, David Deprez, who are defendants in a § 1983 suit brought by Bennie Starks in this Court. (*See* Case No. 09 CV 348.) The plaintiff insurance companies move for summary judgment, arguing that the matters at issue in Starks's underlying lawsuit do not fall within the timeframe covered by the relevant insurance policies. For the reasons stated below, Plaintiffs' motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

### The Underlying § 1983 Action

The facts alleged in the underlying lawsuit are as follows:[1] On January 19, 1986, a woman reported to the Waukegan police that she had been dragged into a ravine, beaten, and raped by an unknown attacker. Several days later, Bennie Starks was arrested for that crime. He

---

[1] These facts are also set forth in detail in the Court's opinion staying Starks's § 1983 action. *See Starks v. City of Waukegan*, No. 09 C 348, 2010 WL 481290 (N.D. Ill. Feb. 4, 2010).

- 1 -

was subsequently convicted at the conclusion of a jury trial held in 1986, and he was ultimately sentenced to 60 years' imprisonment. Starks's conviction and sentence were upheld on appeal. Although Starks continued to fight his conviction while imprisoned, it was not until post-conviction proceedings that DNA testing excluded Starks as the source of the semen found in the victim's body and on her clothing. On March 23, 2006, the Illinois Appellate Court reversed the denial of Starks's post-conviction petition and vacated his convictions for aggravated criminal sexual assault and attempted aggravated criminal sexual assault. Curiously, however, the Appellate Court did not address Starks's outstanding conviction for aggravated battery even though Starks's defense at trial was that he was wrongly identified. As far as the Court understands, Starks's criminal defense counsel is continuing efforts to obtain relief from Starks's aggravated battery conviction. In any event, Starks was released from prison on bond on October 4, 2006, and the Illinois Appellate Court issued a formal mandate reversing Starks's sexual assault convictions on January 20, 2007. Starks currently awaits retrial on the charges underlying these convictions. His trial is scheduled for March 2011.

After serving 20 years in prison for a crime he claims he did not commit, Starks brought suit under 42 U.S.C. § 1983, seeking damages related to his alleged wrongful conviction and imprisonment. On January 20, 2009, Starks filed a four-count complaint against the City of Waukegan, five Waukegan police officers, and three experts who testified at his trial. Count I of Starks's complaint alleges that the individual Defendants engaged in a conspiracy to commit various acts of misconduct that deprived him of his right to a fair trial and led to his wrongful conviction. Count II alleges a § 1983 claim for malicious prosecution in violation of the fourth and fourteenth amendments. Specifically, Starks alleges that Defendants arrested and prosecuted him while concealing their awareness that they acted without probable cause. In a footnote to

Count II, Starks acknowledges that the Seventh Circuit does not recognize a cause of action for malicious prosecution under § 1983. Under Count III, Starks asserts a *Monell* policy claim against the City of Waukegan. Count IV asserts an indemnification claim against the City of Waukegan pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102.

With respect to all counts in his complaint, Starks alleges that "[a]s a direct result of the egregious misconduct of the defendants in obtaining and continuing [his] wrongful conviction and malicious prosecution, [he] suffered loss of his freedom for more than 20 years, and continues to suffer from the restrictions imposed by the pending prosecution as well as extreme physical and mental pain and suffering." (*Starks v. Waukegan*, No. 09-cv-00348, Dkt. 1 at ¶ 38.) Starks alleges further that Defendants' actions "continue to this date, have caused and continue to cause [his] constitutional rights to be violated and the injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and companionship," as set forth in the remainder of his complaint. (*Id.* at ¶ 41.)

On February 4, 2010, this Court stayed Starks's § 1983 action pending the resolution of his state court criminal proceedings. *Starks*, 2010 WL 481290, at *2. The Court concluded specifically that, because "Starks remains convicted of aggravated battery and awaits trial on pending charges of aggravated criminal sexual assault and attempted aggravated criminal sexual assault, no cause of action pursuant to § 1983 has yet accrued." *Id.*

**The Insurance Policies**

   1. *Northfield Policies*

The following Northfield policies are at issue in this case:[2]

- Policy No. AA101050, which was effective annually from November 1, 1991 to November 1, 1994;

---

[2] The parties have agreed that Policy No. AA101158, effective annually from November 1, 1995 to November 1, 1997, is no longer at issue in this case.

- Policy No. A101117, which had a stated policy period of November 1, 1994 to November 1, 1997, but was canceled as of November 1, 1995.

These policies, which were in effect from November 1, 1991 until November 1, 1995, include coverage for law enforcement liability, providing specifically:

> Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of errors, omissions or negligent acts arising out of the performance of the Assured's duties while acting as a law enforcement official or officer in the regular course of public employment as hereinafter defined, arising out of any occurrence from any cause on account of Personal Injury, Bodily Injury, Property Damage or First Aid, happening during the period of this insurance except as covered under Section II A and B.

(Defendant's Rule 56.1 Statement of Material Facts "DSOF" Ex. 4- Policy No. 101050 at 37; Ex. 5- Policy No. 101117 at 27).

The policies also include the following definitions:

> PERSONAL INJURY – The term 'personal injury' wherever used herein, shall mean Bodily Injury, Mental Anguish, Shock, Sickness, Disease, Disability, Wrongful Eviction, Malicious Prosecution, Discrimination, Humiliation, Invasion of Rights of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of Property, Erroneous Service of Civil Papers, Assault and Battery and Disparagement of Property. In addition, respects [sic] Insuring Agreement C only, "Personal Injury" shall mean False Arrest, False Imprisonment, Detention and Violation of Civil Rights arising out of Law Enforcement activities.

> BODILY INJURY – the term 'bodily injury' shall mean physical injury to any person (including death) and any mental anguish or mental suffering associated with or arising form such physical injury.

> OCCURRENCE – the term 'occurrence' wherever used herein shall mean an accident or happening or event or a continuous or repeated exposure to conditions which result in personal injury or damage to property during the policy period. All personal injuries to one or more persons and/or property damage arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one occurrence.

(DSOF Ex. 4 at 37-39; Ex. 5 at 20, 28.)

*2. St. Paul Policies*

The St. Paul policy at issue in this case is Policy No. GP06301927, effective annually from November 1, 2006 until November 1, 2009.[3] The St. Paul policy includes coverage for law enforcement liability and provides as follows:

> **Law enforcement liability.** We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:
> - results from law enforcement activities or operations by or for you;
> - happens while this agreement is in effect; and
> - is caused by a wrongful act that is committed while conducting law enforcement activities or operations.
>
> * * *
>
> *Injury or damage* means bodily injury, personal injury, or property damage.
>
> *Bodily injury* means any harm to the health of other persons. It includes care, loss of services, or death that results from such harm.
>
> *Harm* includes any of the following:
> - Physical harm, sickness, or disease.
> - Mental anguish, distress, injury, or illness,
> - Emotional distress.
> - Humiliation.
>
> *Personal injury* means injury, other than bodily injury, caused by any of the following wrongful acts:
> - False arrest, detention, or imprisonment.
> - Malicious prosecution.
>
> * * *
>
> - Violation of civil rights protected under any federal, state, or local law.
>
> * * *
>
> *Law enforcement activities or operations* means any of the official activities or operations of your police department, sheriff agency, or other public safety organization which enforces the law and protects persons or property.

(DSOF Ex. 6- Policy No. GP06301927 (11/01/06 – 11/01/07) at 5-6; Ex. 7- Policy No. GP06301927 (11/01/07 – 11/01/08) at 5-6; Ex.8- Policy No. GP06301927 (11/01/08 – 11/01/09) at 5-6.)

---

[3] In response to Plaintiffs' motion for summary judgment, Defendants reference their coverage by a current St. Paul policy. Since that policy is not part of this litigation, the Court will disregard Defendants' discussion of the policy and the facts supporting that discussion. The Court renders no opinion at this time on St. Paul's obligations under the current policy.

In addition to the primary policies that were effective annually from November 1, 2006 until November 1, 2009, St. Paul issued coterminous umbrella policies. (*See* DSOF Exs. 10-12.) The umbrella policies include all of the same provisions as the primary policies, (*see* DSOF ¶¶ 25-26, 28-29), and provide further:

> *Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons.
>
> We'll consider any of the following that happens at any time to be part of such physical harm, sickness, or disease, if it results in or from such physical harm, sickness or disease:
> - Mental anguish, injury, or illness.
> - Emotional distress.
> - Care, loss of services, or death.
>
> We'll consider any bodily injury that's a continuation, change, or resumption of previously known bodily injury to happen before this agreement begins if such continuation, change, or resumption would otherwise be covered by this agreement because of a continuous, multiple, or other coverage trigger required under the law that applies.
>
> Of course, if there's a continuation, change, or resumption, after this agreement ends, of bodily injury that:
> - isn't previously known bodily injury; and
> - happens while this agreement is in effect;
>
> we'll consider such continuation, change, or resumption to also happen while this agreement is in effect if that would be the result because of a continuous, multiple, or other coverage trigger required under the law that applies.

(DSOF ¶ 27.)

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party

- 6 -

seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

**ANALYSIS**

Plaintiffs move for summary judgment on the basis of a single argument—that the claims asserted in Bennie Starks's underlying § 1983 action do not fall within the timeframe covered by Plaintiffs' insurance policies. Resolution of this issue depends in large part on the Seventh Circuit's decision in *National Casualty Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010), which the parties interpret in different ways. According to Plaintiffs, the Seventh Circuit's identification of particular events that trigger insurance coverage for civil rights claims relieves them of any obligations related to Starks's suit. As Plaintiffs point out, the Seventh Circuit held that: (1) § 1983 claims for false arrest and false imprisonment trigger the insurance policy in effect when the plaintiff is first arrested or held pursuant to a warrant or other judicially issued process; and (2) § 1983 claims for unconstitutional conviction, imprisonment, and denial of due

process, as well as Illinois state-law claims for malicious prosecution, trigger the policy in effect when the plaintiff's underlying conviction is invalidated. *Id.* at 344-45. Plaintiffs argue that, under *McFatridge*, the triggering events for Starks's claims either pre- or post-date the relevant insurance policies, which were effective November 1991 – November 1995 (Northfield) and November 2006 – November 2009 (St. Paul). In particular, Plaintiffs contend that the triggering events for false arrest or false imprisonment claims are Starks's arrest and initial detention, which occurred in January 1986, and the triggering event for Starks's malicious prosecution, wrongful conviction, and due process claims is Starks's exoneration, which has not yet occurred.

Defendants agree that *McFatridge* identifies specific triggers for claims of false imprisonment or arrest, on the one hand, and claims of malicious prosecution, wrongful conviction, imprisonment, and denial of due process, on the other. (Defendants disagree as to what exactly triggers coverage for claims in the latter category, but more on that later.) The parties' greater point of divergence for the moment concerns the viability of the "continuing tort doctrine." According to Defendants, *McFatridge* endorses this doctrine, which allows for events between a plaintiff's arrest and exoneration to trigger insurance coverage for civil rights claims like Starks's. As far as Defendants are concerned, Starks's arrest and exoneration are not the only events that activate insurance coverage under *McFatridge*; rather, the injuries Starks allegedly suffered between his arrest and exoneration trigger the policies in effect at those times as well.

Plaintiffs, in contrast, read *McFatridge* as recognizing only two triggering events for Starks's claims: (1) his arrest and initial detention, and (2) his exoneration. The Court agrees with Plaintiffs' interpretation. Before the Seventh Circuit in *McFatridge* defined specific triggering events for each type of civil rights claim, it considered whether two allegations in the

underlying plaintiff's complaint triggered coverage as well: (1) that the defendant state's attorney gave false testimony at a post-conviction evidentiary hearing; and (2) that he perpetrated a publicity campaign to defeat the plaintiff's post-conviction petition. *McFatridge*, 604 F.3d at 343. The court held that, because the defendant was no longer state's attorney at the time of either alleged offense, his actions were not covered by the insurance policies at issue. *Id.* In reaching that conclusion, the court rejected the argument that coverage was triggered because the former state's attorney's misconduct could be characterized as an ongoing tort that spanned the timeframe between the plaintiff's arrest and release. *Id.* at 344. The court explained that the relevant policies only provided coverage if an offense was committed during a policy period, and none of the state's attorney's alleged offenses occurred during any of the policy periods. *See id.* Despite Defendants' argument to the contrary, *McFatridge* did not endorse their continuing tort theory. In fact, the court never reached the validity of that theory, basing its decision instead on the fact that the policies at issue did not cover allegations addressed to a former state's attorney. *See id.*

Even if *McFatridge* did recognize the viability of the continuing tort theory, Defendants offer no proper basis for applying that theory here. Defendants contend that, in addition to the insurance coverage triggered by Starks's arrest and exoneration, Northfield's 1991 – 1995 policies are triggered by Starks's "imprisonment, detention, loss of freedom, mental anguish and humiliation," and St. Paul's 2006 – 2009 policies are triggered by "the post-reversal mental anguish, humiliation, and loss of reputation that Starks alleges that he is currently suffering." (Defs' Br., Dkt. 49 at 11.) In essence, Starks's allegations concern the continuing effects of his wrongful conviction rather than injuries actually inflicted during the timeframe covered by Plaintiffs' policies. Although the Seventh Circuit did not provide a detailed discussion on the

matter, it implicitly rejected the argument that the continuing consequences of a wrongful conviction trigger policies in effect whenever those consequences are felt. In *McFatridge*, the court held that claims for unconstitutional conviction, imprisonment, and denial of due process "occurred" for the purpose of triggering insurance coverage when the underlying plaintiff obtained a writ of habeas corpus. *McFatridge*, 604 F.3d at 344. The underlying plaintiff's claims did not, however, trigger the insurance policies in effect while he was imprisoned—and while he conceivably experienced the same type of emotional harm and loss of freedom alleged by Starks. *See id.*

None of the other cases Defendants cite support a continuing tort analysis in this context either. In general, there exist two main approaches to determining insurance coverage for civil rights claims like Starks's. *See Selective Ins. Co. of South Carolina v. City of Paris*, No. 07-CV-2224, 681 F.Supp.2d 975, 980-83 (C.D. Ill. 2010) (discussing majority and minority rules and citing cases). Under the majority rule, civil rights claims such as malicious prosecution, false imprisonment, and wrongful conviction trigger insurance policies in effect when the injury first occurs, i.e., when the underlying charges are filed, or when the plaintiff is wrongfully arrested or first incarcerated. *See id.* at 984-85 (malicious prosecution occurred for insurance purposes when criminal charges were filed, and false imprisonment occurred when underlying plaintiffs were arrested and first incarcerated); *North River Ins. Co. v. Broward County Sheriff's Office*, 428 F.Supp.2d 1284, 1291 (S.D. Fla. 2006) ("the Court finds that an 'occurrence' in a malicious prosecution case and false imprisonment case is the date the Plaintiffs in the Underlying Complaints were actually harmed, not the date they were allegedly vindicated."); *see also TIG Indem. Co. v. McFatridge*, No. 06-2008, 2007 WL 1063018, at *2-3 (C.D. Ill. Mar. 30, 2007) (applying *North River* rule that claims for malicious prosecution and false imprisonment trigger

insurance policies in effect at the time of arrest and incarceration). The minority rule, in contrast, holds that such civil rights claims trigger the insurance policies in effect when the underlying proceeding is terminated in the plaintiff's favor. *See Sec. Mut. Cas. Co. v. Harbor Ins. Co.*, 382 N.E.2d 1, 6 (Ill. App. Ct. 1978), *rev'd on other grounds*, 397 N.E.2d 839 (Ill. 1979) (malicious prosecution claim triggers insurance coverage when the underlying action is terminated in the plaintiff's favor); *Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F.Supp. 1231, 1235 (D.C. Fla. 1974) ("the date of favorable termination (rather than commencement) of the malicious action . . . was the operative occurrence upon which the effectiveness of the policy stands or falls.").

Despite the split in views on insurance coverage for civil rights claims, neither strain of cases endorses the continuing violation theory proposed by Defendants. In fact, several cases reject the very arguments Defendants assert. *See TIG Indem. Co.*, 2007 WL 1063018, at *3 (rejecting argument that incarceration and accompanying injuries trigger insurance coverage for civil rights claims when "none of the actions which led to [the underlying plaintiff's injuries] occurred during the policy period."); *North River*, 428 F.Supp.2d at 1292 (incarceration did not trigger insurance coverage for allegations of malicious prosecution, false imprisonment, and other civil rights violations when underlying plaintiff was arrested, charged, and initially imprisoned long before insurance policy was effective); *Coregis Ins. Co. v. City of Harrisburg*, No. 1:03-CV-920, 2006 WL 860710, at *9 (M.D. Pa. Mar. 30, 2006) (rejecting multiple trigger theory in civil rights context and explaining that the Third Circuit has "noted that the multiple trigger theory has been adopted in very limited circumstances, such as asbestosis, where the injuries caused by exposure do not manifest themselves until a substantial time after the exposure causing the injury"). Ultimately, Defendants provide no relevant authority to support their

invocation of a continuing tort theory in this context.[4] Accordingly, the Court rejects that theory and concludes that the only events that trigger insurance coverage for Starks's claims are his arrest, initial detention, and exoneration. To the extent that Starks alleges false imprisonment or false arrest claims (and it is not clear that he does), the events that trigger coverage for those claims are his arrest and initial detention, both of which occurred in 1986. Because these events occurred well before Plaintiffs' insurance policies took effect, Plaintiffs owe no obligations under these policies with respect to any claims of false imprisonment or arrest.

The question of insurance coverage for Starks's malicious prosecution, wrongful conviction, and due process claims requires further discussion. The parties agree that, under *McFatridge*, these claims trigger the insurance policies in effect when Starks is exonerated. The parties diverge, however, as to the particular event that marks Starks's exoneration for the purposes of triggering insurance coverage. According to Defendants, the critical event occurred when the Illinois Appellate Court issued a mandate reversing Starks's sexual assault convictions on January 20, 2007, during the timeframe covered by St. Paul's policy. In contrast, Plaintiffs argue that, because Starks awaits retrial on the charges underlying his sexual assault convictions, he has not yet been exonerated for the purposes of triggering insurance coverage.

*McFatridge* provides little guidance for resolving the parties' current dispute. Undoubtedly, that is because the Seventh Circuit in *McFatridge* did not face the kind of murky situation that makes this case unusual. Not only does Starks await retrial on charges of aggravated sexual assault and attempted aggravated criminal sexual assault, he apparently

---

[4] Defendants cite several cases in support of their position, but none apply a continuing tort theory in a remotely relevant context. *See,* e.g., *Taco Bell Corp. v. Continental Cas. Co*, 388 F.3d 1069, 1074 (7th Cir. 2004) (complaint charging misappropriation of separate advertising ideas as separate torts triggers policies effective at the time of each alleged tort); *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003) (ongoing emotional harm is a continuing tort, so "continuing tort" exception to statute of limitations applies to claim for intentional infliction of emotional distress arising from spousal abuse); *Roman Catholic Diocese of Joliet v. Lee*, 685 N.E.2d 932, 938-39 (Ill. App. Ct. 1997) (allegations that the Diocese negligently supervised a priest who sexually abused a child triggered insurance policy in effect at the time of each alleged instance of abuse).

remains convicted of aggravated battery. Curiously, when presented with DNA evidence exonerating Starks, the Illinois Appellate Court reversed Starks's sexual assault convictions but left his aggravated battery conviction intact. As stated above, the Court understands that Starks's criminal defense counsel is still pursuing relief from Starks's outstanding aggravated battery conviction. Given these facts, it is quite unclear whether Starks has been exonerated for the purposes of triggering insurance coverage related to his § 1983 claims.

Facing more straightforward facts, the Court in *McFatridge* held that the underlying plaintiff's attainment of habeas relief triggered insurance coverage related to his claims for unconstitutional conviction, imprisonment, and denial of due process. *McFatridge*, 604 F.3d at 344. The court explained that these claims "challenge the validity of [the underlying plaintiff's] conviction" and "did not accrue until 2003, because they require [the underlying plaintiff] to prove that his 'conviction . . . has been reversed on direct appeal, . . . or called into question by a federal court's issuance of a writ of habeas corpus.'" *Id.* (quoting *Heck v. Humprey*, 512 U.S. 477, 486-87 (1994) and citing *Johnson v. Dossey*, 515 F.3d 778 (7th Cir. 2008)). Elaborating further, the court stated that the underlying plaintiff "did not have a complete cause of action, and there was no offense of wrongful conviction or deprivation of due process until June 17, 2003, when the district court issued the writ of habeas corpus." *McFatridge*, 604 F.3d at 344. Next, the Seventh Circuit explained that the underlying plaintiff's state law malicious prosecution claim depended upon the invalidation of his conviction, and "[t]hat offense did not occur, for insurance purposes, until June 2003." *Id.* at 345 (citing *Sec. Mut. Cas. Ins. Co.*, 382 N.E.2d 1, 6 (Ill. 1978)).

Given that Starks remains convicted of aggravated battery and awaits retrial on sexual assault charges, *McFatridge* offers imperfect guidance as to the triggering event for Starks's §

1983 claims. Nevertheless, the Court must rely on this guidance since no on-point authority appears to exist. In *McFatridge*, the Seventh Circuit determined when each claim triggered insurance coverage according to when the claim "accrued." *See McFatridge*, 604 F.3d at 344.[5] Applying this analytical framework, Starks's claims for malicious prosecution, wrongful conviction, and due process trigger insurance coverage when they "accrue." This Court's opinion staying Starks's civil lawsuit was devoted to analyzing when his § 1983 claims accrued and ultimately held that because "Starks remains convicted of aggravated battery and awaits trial on pending charges of aggravated criminal sexual assault and attempted aggravated criminal sexual assault, no cause of action pursuant to § 1983 has yet accrued." *Starks*, 2010 WL 481290, at *2. Because *McFatridge* ties insurance coverage for § 1983 claims to the claims' accrual, the Court is bound to conclude that the triggering event for Starks's claims has not yet occurred.[6] The triggering event for Starks's malicious prosecution, wrongful conviction, and due process claims will occur (if at all) after the timeframe covered by the insurance policies at issue, thus

---

[5] Interestingly, the Seventh Circuit did not explain why insurance coverage for § 1983 claims is tied to their accrual, and that link is not self-evident. The Third Circuit provides a noteworthy discussion on this point:

> Reliance on the commencement of the statute of limitation is not dispositive in determining when a tort occurs for insurance purposes. Statutes of limitation and triggering dates for insurance purposes serve distinct functions and reflect different policy concerns. Statutes of limitation function to expedite litigation and discourage stale claims. But when determining when a tort occurs for insurance purposes, courts have generally sought to protect the reasonable expectations of the parties to the insurance contract. Because of this fundamental difference in purpose, courts have consistently rejected the idea they are bound by the statutes of limitation when seeking to determine when a tort occurs for insurance purposes.

*City of Erie, Pa v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 160 (3d Cir. 1997) (citations omitted).

[6] As long as insurance coverage for § 1983 claims is linked to their accrual, the Seventh Circuit's decision in *Johnson v. Dossey*, 515 F.3d 778 (7th Cir 2008), provides further, implicit support for the Court's current decision. In *McFatridge*, the court cited *Johnson*, without discussion, for the proposition that the underlying plaintiff's claims for unconstitutional conviction, imprisonment, and denial of due process did not accrue until the district court granted his petition for habeas relief. *McFatridge*, 604 F.3d at 344. The court in *Johnson* considered when claims for denial of due process under § 1983 accrue for statute-of-limitations purposes. *Johnson*, 515 F.3d at 781-82. After considering relevant Supreme Court precedent, the court concluded that such claims accrue upon the plaintiff's exoneration. *Id.* at 782. Significantly, the Seventh Circuit pinned the plaintiff's exoneration (and therefore the accrual of her § 1983 claims) to her ultimate acquittal after a retrial, not the date on which she was granted a new trial and released from custody. *Id.* Although the Seventh Circuit reached this conclusion without discussion, its holding nonetheless provides some guidance for this Court in the absence of any clearer authority.

Plaintiffs owe no obligations under those policies with respect to Starks's lawsuit.[7] Because the triggering events for Starks's § 1983 claims all pre- or post-date the insurance policies at issue, Plaintiffs' motion for summary judgment is granted.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is GRANTED.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** December 27, 2010

---

[7] Another unusual feature of the underlying case is that Starks brings a claim for malicious prosecution under § 1983, even though he acknowledges that the Seventh Circuit does not recognize a cause of action for such claims. Because there exists no cause of action for malicious prosecution under § 1983, the Court has applied the *McFatridge* court's analysis of insurance coverage for state-law claims of malicious prosecution. *McFatridge*, 604 F.3d at 344-45.